VITTIGLIO v VITTIGLIO

Docket Nos. 303724 and 304823. Submitted June 13, 2012, at Detroit. Decided July 31, 2012, at 9:00 a.m. Leave to appeal denied, 493 Mich 936.

Plaintiff, Cynthia N. Vittiglio, moved in the Oakland Circuit Court to set aside the judgment of divorce entered pursuant to a settlement agreement reached between her and defendant, Thomas A. Vittiglio, during mediation. Plaintiff had moved to set aside the settlement and dismiss the case before the judgment was entered. The court, Cheryl A. Matthews, J., denied the motions, finding that plaintiff's attempts to disavow the settlement and dismiss the case were frivolous. The court ordered the settlement agreement recorded at mediation to be merged and incorporated into the judgment of divorce that was entered. The court awarded sanctions to defendant on the basis that plaintiff's frivolous motions and refusal to sign the settlement agreement resulted in additional expenses for defendant. Plaintiff appealed the judgment of divorce (Docket No. 303724) and the award of sanctions (Docket No. 304823), and the appeals were consolidated.

The Court of Appeals *held*:

1. Under MCR 3.216(A)(1), all domestic relations cases, as defined in MCL 552.502(*l*), now MCL 552.502(m), are subject to mediation under MCR 3.216. MCR 3.216(H)(7)) requires that for the terms of a settlement agreement to be binding, the terms of that settlement agreement must be reduced to a signed writing by the parties or acknowledged by the parties on an audio recording. Pursuant to MCL 552.502(m)(*i*), domestic relations matters include circuit court proceedings in which spousal support is in issue and that arise out of litigation under a statute of this state, including but not limited to MCL 552.1 to 552.45. Spousal support was a disputed issue during mediation and was addressed and decided in the settlement agreement. In addition, the litigation included the issue of property division which is addressed for divorce actions in MCL 552.19 and MCL 552.23. The proceeding was clearly a domestic relations matter pursuant to both MCL 552.502(m)(*i*) and MCR 3.216 and the requirements of MCR 3.216 apply to the settlement agreement placed on the record during mediation.

2. The statute of frauds, MCL 566.106, requires that the conveyance of an interest in land must be by a deed or a conveyance in writing or by act or operation of law. MCR 3.216(7) provides that the terms of a domestic relations settlement agreement reached by mediation are binding if (1) reduced to a signed writing, or (2) acknowledged by the parties on an audio or video recording. Both parties acknowledged the property settlement on a recording in accordance with MCR 3.216(H)(7). The statute of frauds was not violated because the property settlement occurred by act or operation of law pursuant to the court rule.

3. Settlement agreements should not normally be set aside. Once the agreement is reached and put in writing and signed by the parties or their representatives, or orally placed on the record and consented to by the parties, it may not be disavowed merely because a party has had a change of heart. Courts must uphold divorce property settlements because modifications of property settlements in divorce judgments are disfavored. The court did not err by finding that the parties reached a binding settlement agreement when they acknowledged the terms of the agreement in an audio recording in accordance with MCR 3.216(H)(7).

4. In the absence of fraud, duress, mutual mistake, or severe stress, which can prevent a party from understanding in a reasonable manner the nature and effect of the act in which he or she was engaged, courts are bound by property settlements reached through the parties' negotiations in a divorce action. When a party to a consent judgment argues that consent was achieved through duress or coercion practiced by her attorney, the judgment will not be set aside absent a showing that the other party participated in the duress or coercion. The court was not required to conduct an evidentiary hearing on plaintiff's assertion of lack of consent to the settlement agreement because plaintiff failed to request one. The court properly determined that there was no basis for invalidating plaintiff's consent to the settlement. There was no support in the record for plaintiff's claim that defendant's alleged prior threats affected the validity of her consent to the settlement agreement in light of the type of mediation used. There was no evidence that defendant had been involved in any communication to plaintiff of a supposed advantage of settling the case instead of proceeding to trial or that defendant had colluded with plaintiff's attorney to coerce her to settle. It was appropriate for plaintiff's attorney to negotiate within the settlement an agreement that defendant would pay his fees directly.

5. Severe stress can affect a party's mental capacity to contract and make consent to a settlement agreement illusory when a

person does not possess sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he or she is engaged. There was no evidence that plaintiff's consent to the property settlement was illusory. Plaintiff had indicated in the audio recording that she understood the terms of the agreement and had no questions for her attorney or the mediator.

6. If a property settlement in a divorce action appears unconscionable, a court may review the equities of the settlement when one of the parties later attempts to disavow it. A contract may be procedurally unconscionable or substantively unconscionable. An agreement is procedurally unconscionable when the weaker party has no alternative but to accept the agreement. Substantive unconscionability occurs when a term of the settlement agreement is so inequitable and extreme that it shocks the conscience. Under MCR 3.216(A)(2), domestic relations mediation is a nonbinding process. The court did not clearly err by finding that the agreement was not unconscionable. The settlement agreement was not so inequitable that it shocked the conscience.

7. An action for fraud must be predicated on a false statement relating to past or existing fact. Plaintiff failed to provide any proof that her consent to the property settlement was procured by fraud. She did not aver that she had consented to the settlement because she was misled into believing that a valid prenuptial agreement existed.

8. A party must receive some type of reasonable notice and an opportunity to be heard before sanctions may be imposed under MCR 2.114. The court was not required to hold a separate hearing when it was satisfied that it was able to sufficiently decide the issue of sanctions on the evidence before it. Plaintiff was afforded reasonable notice and an opportunity to be heard before sanctions were imposed. The court's finding that plaintiff's motion to disavow the settlement agreement and to dismiss the divorce case had frivolous motives was not clearly erroneous and the order granting defendant sanctions was proper.

9. MCR 2.114(D) provides that the signature of an attorney or a party constitutes a certification by the signer (1) that he or she has read the document, to the best of his or her knowledge, information, and belief formed after reasonable inquiry, (2) that the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and (3) that the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. The filing of a signed document that is not well grounded in fact and

law subjects the filer to sanctions under MCR 2.114(E). The trial court did not clearly err by concluding that plaintiff filed the motions because she regretted her agreement to the terms of the settlement, and to delay entry of the judgment of divorce to harass defendant. Plaintiff's argument that she agreed to the settlement because she was in fear for her life was inconsistent with the shuttle diplomacy method of mediation used in this case as well as with her subsequent motion to dismiss the case to reconcile with defendant and supported the court's finding that the motions were not well grounded in fact contrary to MCR 2.114(D).

10. An award of attorney fees as sanctions under MCR 2.114(E) must be reasonable and consider the factors set forth in MRPC 1.5(a). It is acceptable for the court to take judicial notice of facts that can be accurately determined by sources of unquestionable reliability, for example, statistics. The fees customarily charged in the locality can be established by empirical data found in surveys. The burden of proving the reasonableness of the requested fees is on the requesting party and the court has discretion to order sanctions in an amount less than that which was requested. The court did not abuse its discretion by awarding costs and attorney fees to defendant. Plaintiff's counsel was allowed to question defendant's attorneys about their billing statements and there was no evidence to support plaintiff's assertion that the court placed the burden on plaintiff to show that the requested fees were not reasonable. The court properly considered the State Bar of Michigan Economics of Law Practice Survey when evaluating the reasonableness of defendant's attorney fees and in determining that defendant had met his burden. The court awarded sanctions in an amount less than that which defendant requested and was therefore clearly aware that it was within its discretion to deviate below the requested amount.

Affirmed.

1. DIVORCE — DOMESTIC RELATIONS — SETTLEMENT AGREEMENTS — AUDIO RECORDINGS.

Under MCR 3.216(A)(1), all domestic relations cases, as defined in MCL 552.502(*l*), now MCL 552.502(m), are subject to mediation under MCR 3.216; MCR 3.216(H)(7) requires that for the terms of a settlement agreement to be binding, the terms of that settlement agreement must be reduced to a signed writing by the parties or acknowledged by the parties on an audio recording; domestic relations matters include circuit court proceedings in which spousal support is in issue and that arise out of litigation under a statute of this state, including but not limited to MCL 552.1 to

552.45; a divorce judgment settlement agreement that addresses spousal support and property distribution is a domestic relations case for purposes of MCR 3.216(A).

2. DIVORCE — SETTLEMENT AGREEMENTS — STATUTE OF FRAUDS.

The statute of frauds, MCL 566.106, requires that the conveyance of an interest in land must be by a deed or a conveyance in writing or by act or operation of law; MCR 3.216(7) provides that the terms of a domestic relations settlement agreement reached by mediation are binding if (1) reduced to a signed writing, or (2) acknowledged by the parties on an audio or video recording; a property settlement in a domestic relations matter that is acknowledged by the parties on the record in accordance with MCR 3.216(7) does not violate the statute of frauds because the settlement occurred by act or operation of law pursuant to the court rule.

3. SANCTIONS — HEARING — REASONABLE NOTICE.

A party must receive some type of reasonable notice and an opportunity to be heard before sanctions may be imposed under MCR 2.114; the court is not required to hold a separate hearing if it is satisfied that it can sufficiently decide the issue of sanctions on the evidence before it.

4. SANCTIONS — DOCUMENTS — WELL GROUNDED IN FACT.

MCR 2.114(D) provides that the signature of an attorney or a party constitutes a certification by the signer (1) that he or she has read the document, to the best of his or her knowledge, information, and belief formed after reasonable inquiry, (2) that the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and (3) that the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; the filing of a signed document that is not well grounded in fact and law subjects the filer to sanctions under MCR 2.114(E).

5. SANCTIONS — ATTORNEY FEES — REASONABLENESS — BURDEN OF PROOF.

An award of attorney fees as sanctions under MCR 2.114(E) must be reasonable and the court must consider the factors set forth in MRPC 1.5(a) when making the award; the court may take judicial notice of facts that can be accurately determined by sources of unquestionable reliability, for example, statistics; the fees customarily charged in the locality can be established by empirical data found in surveys like the State Bar of Michigan Economics of Law Practice Survey; the burden of proving the reasonableness of the

requested fees is on the requesting party and the court has
discretion to order sanctions in an amount less than that which
was requested.

*Judith A. Curtis* and *Trish Oleska Haas* for Cynthia
Neal Vittiglio.

*Gilbert Gugni* and *Scott Bassett* for Thomas Anthony
Vittiglio.

Before: K. F. KELLY, P.J., and SAWYER and RONAYNE
KRAUSE, JJ.

RONAYNE KRAUSE, J. These consolidated appeals arise
out of a judgment of divorce entered pursuant to a
settlement agreement reached between the parties dur-
ing mediation. After the settlement was reached but
before the judgment was entered, plaintiff had sought
to disavow and set aside the settlement and dismiss the
case. The trial court denied plaintiff's motions to do so
and, pursuant to its finding that the motive behind the
motion was frivolous, awarded sanctions to defendant.
In Docket No. 303724, plaintiff appeals as of right the
judgment of divorce, and in Docket No. 304823, plaintiff
appeals as of right the trial court's award of sanctions.
We affirm.

The parties were married in 1988 and had no chil-
dren together. Plaintiff filed for divorce in 2010. The
parties proceeded to mediation on January 26, 2011,
which culminated in an audio recording of a settlement
agreement as to all issues in the matter. The parties'
attorneys stated on the recording that it had accurately
described the agreement and covered everything. Both
parties agreed that they understood everything that
had been recorded and agreed to all the terms as full,
final, and binding. However, when defendant moved to
enforce the settlement agreement and for entry of the

divorce judgment, plaintiff refused to sign the consent judgment and sought to disavow the agreement. Defendant subsequently sought to recover from plaintiff all his costs incurred in maintaining the status quo beyond the date specified in the agreement and attorney fees. Plaintiff sought to dismiss the action, which the trial court denied. The trial court entered a judgment of divorce and ordered the settlement agreement recorded at mediation to be merged and incorporated into that judgment. The trial court also found plaintiff's attempts to disavow the settlement agreement and to dismiss the case were frivolous, and awarded defendant sanctions.

Plaintiff first argues on appeal that the trial court erred by finding the audiorecorded settlement agreement binding, arguing that although mediation may culminate in a settlement agreement that will be binding if "acknowledged by the parties on an audio or video recording," MCR 3.216(H)(7), that process is only available in "domestic relations cases, as defined in MCL 552.502(l),"[1] MCR 3.216(A)(1). Plaintiff argues that because this is not a domestic relations case pursuant to that definition, MCR 2.507(G) required that their binding settlement be made in writing or placed on the record in open court. Plaintiff additionally argues that the statute of frauds, see MCL 566.106, MCL 566.108, and MCL 566.132, precludes enforcement of the settlement agreement. We disagree with plaintiff's arguments.

"The finding of the trial court concerning the validity of the parties' consent to a settlement agreement will not be overturned absent a finding of an abuse of discretion." *Keyser v Keyser*, 182 Mich App 268, 270; 451 NW2d 587 (1990). "The construction and applica-

---

[1] This statutory provision is now MCL 552.502(m).

tion of a court rule are questions of law that [the Court of Appeals] reviews de novo on appeal." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 456; 733 NW2d 766 (2006). We review for clear error the factual findings underlying a trial court's application of a court rule. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008); MCR 2.613(C).

"Domestic relations matter[s]" include circuit court proceedings as to, among other things, spousal support, arising "out of litigation under a statute of this state, including, but not limited to . . . MCL 552.1 to 552.45." MCL 552.502(m)(*i*). Plaintiff sought an award of permanent spousal support in her complaint for divorce, spousal support was identified as a disputed issue in the scheduling order that referred the case to mediation, and spousal support was addressed and decided in the recording of the parties' settlement agreement. Furthermore, MCL 552.19 and MCL 552.23 address property division in divorce actions. Consequently, it is clear that this proceeding *is* a domestic relations matter pursuant to both MCL 552.502(m)(*i*) and MCR 3.216. Accordingly, we reject plaintiff's argument that MCR 3.216 does not apply to the settlement in this case.[2] Both parties also unambiguously acknowledged the agreement in the audiorecording, as required by MCR 3.216(H)(7).

We likewise reject plaintiff's statute of frauds argument. The property settlement involved the parties' interest in lands, so we agree that it is subject to the statute of frauds. However, MCL 566.106 provides that, as an alternative to "a deed or conveyance in writing," an estate or interest in lands may also be conveyed "by

[2] We additionally observe that plaintiff failed to comply with the procedure specified by MCR 3.216(D)(1) for objecting to mediation.

act or operation of law." MCR 3.216(H)(7) provides that the terms of a settlement reached as a result of mediation are binding if (1) reduced to a signed writing or (2) acknowledged by the parties on an audio or video recording. The parties acknowledged their settlement agreement on an audio recording, which is one of the options set out in MCR 3.216(H)(7) for making their settlement binding. Consequently, the property settlement occurred "by act or operation of law" when the parties acknowledged their settlement on a recording. The statute of frauds was not violated.

"[S]ettlement agreements should not normally be set aside and . . . once a settlement agreement is reached a party cannot disavow it merely because [s]he has had 'a change of heart.' " *Metro Life Ins Co v Goolsby*, 165 Mich App 126, 128; 418 NW2d 700 (1987). Courts must uphold divorce property settlements reached through negotiation and agreement of the parties because modifications of property settlements in divorce judgments are disfavored. *Baker v Baker*, 268 Mich App 578, 586; 710 NW2d 555 (2005). "This rule applies whether the settlement is in writing and signed by the parties or their representatives or the settlement is orally placed on the record and consented to by the parties, even though not yet formally entered as part of the divorce judgment by the lower court." *Keyser*, 182 Mich App at 270. Here, the parties made their settlement binding by acknowledging it on an audio recording as provided in MCR 3.216(H)(7). The trial court did not err by finding that the parties reached a binding settlement agreement.

Plaintiff relatedly argues that the trial court erred by failing to set aside the settlement agreement under well-established contract principles. Plaintiff argues that she did not actually consent to the settlement

agreement because (1) defendant had threatened her life in the past and she developed an extreme fear of him, (2) the mediator and her attorney told her that the settlement offer was greater than what she would receive at a trial, and (3) she felt "severely betrayed" because her attorney negotiated a $50,000 payment for attorney fees. We find no merit to her arguments.

"It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged." *Keyser*, 182 Mich App at 269-270; see also *Calo v Calo*, 143 Mich App 749, 753-754; 373 NW2d 207 (1985). However, the parties must have actually consented to the settlement agreement. *Howard v Howard*, 134 Mich App 391, 397; 352 NW2d 280 (1984). "The finding of the trial court concerning the validity of the parties' consent to a settlement agreement will not be overturned absent a finding of an abuse of discretion." *Keyser*, 182 Mich App at 270. A trial court's factual findings are reviewed for clear error. *Smith v Smith*, 278 Mich App 198, 204; 748 NW2d 258 (2008). The trial court did not conduct an evidentiary hearing on plaintiff's claims that she did not actually consent, but the trial court was not obligated to because plaintiff never requested one. See *Mitchell v Mitchell*, 198 Mich App 393, 399-400; 499 NW2d 386 (1993) (noting that the trial court is not obligated to hold an evidentiary hearing to resolve a factual dispute or ambiguity in a divorce proceeding unless requested by a party).

Plaintiff averred in an affidavit that defendant had threatened to kill her on more than one occasion in the

past. However, the settlement agreement was reached through mediation, during which plaintiff was represented by counsel and the mediator conducted "shuttle diplomacy," which entailed the parties not even being in the same room.[3] Plaintiff never claimed that defendant had threatened her into agreeing to the settlement. The day after she filed an affidavit relating her extreme fear of defendant, she moved to dismiss on the ground that she wished to reconcile with defendant. While these two things are not necessarily mutually exclusive, and we recognize that extricating one's self from a domestic violence situation is often exceedingly difficult and sometimes fraught with actions that are seemingly baffling to outsiders, under the particular circumstances of this specific case we find no support in the record for plaintiff's claim that defendant's prior threats affected the validity of her consent to the settlement agreement, particularly because of the method of mediation used in this case.

Plaintiff also averred in her affidavit that the mediator and her attorney repeatedly told her that the proposed settlement was better than that which she could expect at a trial. When a party to a consent judgment argues that consent was achieved through

---

[3] The Supreme Court Administrative Office (SCAO)'s Standards of Conduct for Mediators do not specify any particular manner for handling mediation when domestic violence or control exists. However, the SCAO's Model Screening Protocol for domestic-relations mediation when domestic violence or control exists contains a number of suggestions for keeping parties safe, accommodated, and capable of negotiating and making decisions free from fear or coercion. It appears that the mediator took proper care to ensure that the mediation was free from coercion. See Office of Dispute Resolution, State Court Administrative Office, Michigan Supreme Court, *Domestic Violence and Child Abuse/Neglect Screening for Domestic Relations Mediation: Model Screening Protocol* (January 2006), <http://courts.michigan.gov/scao/resources/standards/odr/dvprotocol.pdf>

duress or coercion practiced by her attorney, the judgment will not be set aside absent a showing that the other party participated in the duress or coercion. *Howard*, 134 Mich App at 397; *Grand Rapids Growers, Inc v Old Kent Bank & Trust Co*, 99 Mich App 128, 129-130; 297 NW2d 633 (1980). There is no indication that defendant was involved in any communication to plaintiff of a supposed advantage of settling the case instead of proceeding to trial. There is also no basis for disturbing the trial court's finding that plaintiff was an educated and intelligent person represented by an experienced attorney before an experienced mediator. We further agree with the trial court's observation that a certain amount of pressure to settle is fundamentally inherent in the mediation process, and is practically part of the definition. See MCR 3.216(A)(2) ("Domestic relations mediation is a nonbinding process in which a neutral third party facilitates communication between parties to promote settlement."). That pressure to settle is not, by itself, coercion.

Plaintiff additionally raised concerns over the provision in the agreement whereby defendant would pay $50,000 directly to plaintiff's attorney. Plaintiff felt betrayed by her attorney because he never told her that she owed him a fee beyond his retainer, and she believed that the payment indicated that defendant had participated in coercing her to settle. As the trial court observed, there was nothing unusual about plaintiff's counsel negotiating a provision requiring defendant to be responsible for some or all of plaintiff's attorney fees. See MCR 3.206(C)(2)(a) (requiring that a party who requests attorney fees and expenses must allege facts to show that he or she is unable to bear the expense of the action and the other party is) and *Kosch v Kosch*, 233 Mich App 346, 354; 592 NW2d 434 (1999) ("A party in a domestic relations matter who is unable to bear the

expense of attorney fees may recover reasonable attorney fees if the other party is able to pay."). There is no indication that defendant was involved in negotiating the direct payment of attorney fees as part of the settlement.

Plaintiff claims that her ability to consent to the settlement agreement was impaired by severe stress. However, the test for whether consent was illusory because of severe stress is that of mental capacity to contract. *Howard*, 134 Mich App at 396. That is, "whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he [or she] is engaged." *Id.* (citation and quotation marks omitted). Plaintiff would therefore have to show that she did not even comprehend the nature or terms of the agreement. *Id.* Plaintiff simply has not shown anything of the sort; to the contrary, the mediator questioned plaintiff about her understanding of the terms of the settlement agreement, plaintiff affirmatively indicated that she understood the terms, had no questions for her attorney or the mediator, and agreed to all of the terms as a full and final binding settlement of the case. Plaintiff's consent to the agreement cannot be invalidated on the basis of her stress.

Plaintiff next argues that the settlement agreement was unconscionable. This Court has at least implied that a court may review the equities of property settlements in divorce actions when parties "later attempt to renege on such agreements" if they appear unconscionable. See *Tinkle v Tinkle*, 106 Mich App 423, 428; 308 NW2d 241 (1981). "The examination of a contract for unconscionability involves inquiries for both procedural and substantive unconscionability." *Hubscher & Son, Inc v Storey*, 228 Mich App 478, 481; 578 NW2d 701

(1998). "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the [settlement agreement]." *Clark v Daimler-Chrysler Corp*, 268 Mich App 138, 144; 706 NW2d 471 (2005). Substantive unconscionability exists where the challenged term is not substantively reasonable. *Id.* The term must be more than merely disadvantageous; rather, "the inequity of the term [must be] so extreme as to shock the conscience." *Id.*

MCR 3.216(A)(2) specifically provides that "[d]omestic relations mediation is a nonbinding process . . . ." Plaintiff was not under any obligation to accept the settlement agreement, and she always had the option of proceeding to trial. Plaintiff claimed, without any evidentiary support, that the marital estate had an estimated value of $6 million, making the settlement shocking after a 23-year marriage. The settlement agreement provided plaintiff with cash funds of $1.2 million, required defendant to be responsible for $50,000 of plaintiff's attorney fees, provided that plaintiff was to receive the contents of the parties' Florida home and either a country club membership or an additional $20,000, and permitted plaintiff to retain all her bank and brokerage accounts, and her retirement account. Even presuming plaintiff received less than half of the mathematical value of the marital estate, we are not persuaded that she received such an inequitable distribution that the trial court can be said to have clearly erred by finding that the agreement was not unconscionable.

Plaintiff also argues that the trial court erred by failing to invalidate the settlement agreement on the basis that it was procured by fraud. "[A]n action for fraud must be predicated upon a false statement relating to a past or existing fact." *Cummins v Robinson Twp*, 283 Mich App 677, 696; 770 NW2d 421 (2009).

Plaintiff averred that defendant represented at mediation that the parties had a valid prenuptial agreement even though he knew that the prior prenuptial agreement had been set aside, and she believed that defendant's misrepresentation influenced the mediator's determination of a fair settlement. There is no indication that either party sought to enforce a prenuptial agreement, and nothing in the record indicates that plaintiff's consent to the settlement was procured by any representation concerning the validity of a prenuptial agreement. Again, plaintiff was not bound by any determination by the mediator. Moreover, plaintiff did not aver that she consented to the settlement because she was misled into believing that a valid prenuptial agreement existed. Accordingly, plaintiff was not entitled to have the settlement agreement set aside on the basis of fraud.

In sum, the trial court did not err by rejecting plaintiff's allegations of duress, coercion, undue influence, unconscionable advantage, and fraud. The court properly determined that there was no basis for invalidating plaintiff's consent to the settlement.

Plaintiff next argues that the trial court erred by finding that both her motion to disavow the settlement agreement and her motion to dismiss were frivolous without first conducting an evidentiary hearing. "MCR 2.114 does not provide a procedure to be followed before sanctions can be imposed." *Hicks v Ottewell*, 174 Mich App 750, 757; 436 NW2d 453 (1989). However, a party must receive some type of reasonable notice and an opportunity to be heard before the imposition of sanctions under MCR 2.114. *Id.*

Plaintiff was afforded notice that sanctions were being sought by defendant's motion for costs and attorney fees. Plaintiff answered defendant's motion and

extensively argued against defendant's motion at the motion hearing. The trial court concluded, on the basis of plaintiff's arguments and pleadings, that plaintiff's motion to disavow the settlement agreement and motion to dismiss the divorce case had frivolous motives. The trial court's determination is supported by the evidence. We are not left with a definite and firm conviction that a mistake was made. *Contel Sys Corp v Gores*, 183 Mich App 706, 711; 455 NW2d 398 (1990). As discussed, we are not persuaded that, in this particular case, it was improper for the trial court to view plaintiff's claimed fear for her life with some dubiousness. The trial court was not required to conduct a separate evidentiary hearing when it was satisfied that it was able to sufficiently decide the issue on the evidence before it. Plaintiff was afforded reasonable notice and an opportunity to be heard before sanctions were imposed. See *Hicks*, 174 Mich App at 757.

The trial court did not clearly err by finding that her motions to disavow the settlement agreement and to dismiss the divorce case had frivolous motives. *Contel*, 183 Mich App at 711. MCR 2.114(D) provides that the signature of an attorney or a party constitutes a certification by the signer that

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

"The filing of a signed document that is not well grounded in fact and law subjects the filer to sanctions

pursuant to MCR 2.114(E)." *Guerrero v Smith*, 280 Mich App 647, 678; 761 NW2d 723 (2008).

In this case, the trial court found that plaintiff filed her motions because she had "buyer's remorse" and simply wanted "a do-over," but she had no reasonable basis to believe that the facts underlying her legal position were true. The trial court also found that plaintiff filed the motions for the purpose of delay to prevent the judgment of divorce from being entered and that the motions were disingenuous and directed at harassing defendant. The record supports these findings. Plaintiff willingly engaged in mediation, acknowledged that she heard and understood all of the terms of the settlement agreement, and stated that she agreed to all of those terms as a full and final binding settlement of the case. When defendant submitted the written settlement agreement and consent judgment of divorce for signature, plaintiff refused to do so. Instead, plaintiff moved to disavow the settlement agreement and supported her motion with an affidavit averring that defendant had caused her to fear for her life, but then moved to dismiss the case the very next day so she could reconcile with defendant. Plaintiff's inconsistent actions and recorded statements acknowledging her understanding of the settlement terms and her agreement with those terms as a final and binding settlement, as well as the method of mediation used in this case, belie her assertion that her motions were well grounded in fact.

Plaintiff also argues that the trial court erred by finding that her motions were filed for the improper purpose of causing delay. The settlement agreement indicated that the judgment of divorce was to be entered as soon as possible, likely in mid to late February, possibly as late as early March. Plaintiff argues that

because she filed her motions in mid-February, she did not cause any delay. However, the undisputed evidence showed that plaintiff had refused to sign the written settlement agreement and consent judgment of divorce when defendant presented those documents. Although plaintiff contends that she would not sign the judgment because it included some provisions that were not set out on the record at mediation, defense counsel agreed to take out the offending provisions. Plaintiff then moved to disavow the settlement agreement in its entirety and, the very next day, moved to dismiss the divorce case. The inconsistency of plaintiff's actions support the trial court's finding that she was engaging in tactical maneuvers to prevent the judgment of divorce from entering. The trial court did not clearly err by finding that plaintiff's motions were filed for the purpose of causing unnecessary delay.

Lastly, plaintiff argues that the trial court abused its discretion by awarding sanctions in the amount of $17,695. "We review the amount of an award of sanctions for an abuse of discretion." *In re Costs & Attorney Fees*, 250 Mich App 89, 104; 645 NW2d 697 (2002). An award of attorney fees as sanctions under MCR 2.114(E) must be "reasonable." *Id.*; MRPC 1.5(a). Here, the trial court issued an opinion and order in which it made detailed findings of fact and considered the factors set forth in MRPC 1.5(a). Plaintiff does not dispute the trial court's findings of fact. Rather, she argues that the trial court improperly shifted the burden of proof, improperly decided evidentiary issues by taking judicial notice of the State Bar of Michigan Economics of Law Practice Survey, and failed to recognize that it had discretion to order sanctions in an amount less than the full amount of actual attorney fees. The record does not support plaintiff's claims.

Plaintiff correctly observes that "the burden of proving the reasonableness of the requested fees rests with the party requesting them." *Smith v Khouri*, 481 Mich 519, 528-529; 751 NW2d 472 (2008). Defendant supported his motion for costs and attorney fees with an itemized list of fees resulting from plaintiff's actions, as well as documentation supporting his claims for reimbursement for out-of-pocket expenses for airfare and hotel, country club dues, and health insurance. At the hearing on defendant's motion, the trial court accommodated plaintiff by conducting an evidentiary hearing in which plaintiff's counsel was permitted to question defendant's two attorneys about their billing statements. There is no indication that the trial court placed the burden on plaintiff to show that defendant's requested fees were not reasonable, and plaintiff's assertion that defendant failed to meet his burden of proving the reasonableness of the requested fees is without merit.

Further, it was not improper for the trial court to consider the State Bar of Michigan Economics of Law Practice Survey when evaluating the reasonableness of defendant's attorney fees. "It is . . . acceptable for the court to take judicial notice of facts that can be accurately determined by sources of unquestionable reliability, for example, statistics." *Protective Nat'l Ins Co of Omaha v City of Woodhaven*, 438 Mich 154, 171; 476 NW2d 374 (1991) (CAVANAGH, C.J., dissenting), citing *Fortner v Koch*, 272 Mich 273[, 279]; 261 NW 762 (1935). Indeed, in *Smith*, 481 Mich at 530-532, our Supreme Court stated that "[t]he fees customarily charged in the locality for similar legal services can be established by . . . empirical data found in surveys" and instructed that "trial courts of this state should avail themselves of the most relevant available data" such as

that "contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan."

Finally as to this issue, the record does not support plaintiff's argument that the trial court failed to recognize that it had discretion to order sanctions in an amount less than the amount of actual attorney fees requested. Plaintiff is correct that the actual fees charged are not necessarily reasonable fees. *Zdrojewski v Murphy*, 254 Mich App 50, 72; 657 NW2d 721 (2002). The record discloses that the trial court understood that it was only permitted to award reasonable attorney fees after considering the factors in MRPC 1.5(a). Indeed, the court expressly refused to award attorney fees for various items, including time spent preparing and revising the judgment of divorce and for time spent conversing with defendant's son. Thus, it is clear that the trial court was aware of its discretion to independently determine the reasonableness of the requested fees.

In sum, we find no clear err in the trial court determination that plaintiff was liable for sanctions because her motions were interposed for frivolous reasons, and conclude that the trial court did not abuse its discretion by awarding costs and attorney fees in the amount of $17,965.

Affirmed.

K. F. KELLY, P.J., and SAWYER, J., concurred with RONAYNE KRAUSE, J.