*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAMSEY JUSTIN HENGARTNER,

   Plaintiff-Appellee,

v

JESSICA ROSE HENGARTNER,

   Defendant-Appellant.

UNPUBLISHED
February 12, 2025
10:16 AM

No. 369056
Grand Traverse Circuit Court
LC No. 22-017147-DM

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

In this divorce proceeding, defendant, Jessica Hengartner, appeals as of right the trial court's entry of a judgment of divorce on the basis of two settlement agreements entered into by the parties following mediation. On appeal, defendant argues the settlement agreements were ambiguous and incomplete, unconscionable, and the result of coercion, such that the trial court should not have followed them. Defendant also challenges the judgment of divorce as inconsistent with the settlement agreements. Finding no errors warranting reversal, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The parties married in 2012 and have two children, both of whom are still minors. Plaintiff, Ramsey Hengartner, filed for divorce in 2022. Subsequently, two mediation sessions were conducted and culminated in two agreements, one addressing child custody and one addressing property. These agreements were memorialized in documents entitled "Memorandum of Understanding,"[1] which detailed in writing the settlements reached by the parties regarding both topics. Both parties signed both MOUs. The first paragraph of both MOUs state: "We, the undersigned, having participated in a mediation session and being satisfied that the provisions of the resolution of our dispute are fair and reasonable, hereby agree to abide by and fulfill the following . . . ." The Custody MOU was dated April 11, 2023, and the Property MOU was dated

---

[1] Hereinafter the "Custody MOU" and "Property MOU."

June 13, 2023. Neither party was represented by counsel during the mediation sessions; however, both parties retained counsel before entry of the judgment of divorce.

Following the second mediation session, plaintiff moved for entry of the judgment of divorce, asserting that the parties agreed on all material provisions of the MOUs during mediation and came to a final, binding resolution. Defendant objected to entry of the judgment of divorce, arguing it was unclear whether the MOUs represented final agreements between the parties, the MOUs were the product of coercion and manipulation, and the Property MOU was unconscionable. Defendant alleged that plaintiff exerted financial control over her throughout the marriage, told her that she was not entitled to anything coming out of the marriage, and told her the marital house was "his" house. She further alleged that, as a result of the MOUs, plaintiff would receive approximately $340,000 in assets and defendant would receive only $3,500 and be left in debt. She also alleged that the Custody MOU was a radical change from the established custodial environment during the marriage and stripped her of meaningful contact with her children. Defendant did not request an evidentiary hearing or provide evidence of these allegations.

In response, plaintiff argued that defendant's motion should be denied. Plaintiff argued that the MOUs constituted settlement agreements that were full, final, and binding as plainly expressed on the face of the documents. Plaintiff further argued that defendant's counsel presented no evidence of coercion, fraud, or duress. Both parties agreed to participate in mediation, defendant did not request counsel or a different mediator, and the mediation sessions resulted in settlement agreements signed by both parties. Plaintiff asserted defendant simply had a change of heart.

On November 27, 2023, following oral arguments, the trial court rejected defendant's challenges to the MOUs, noting that the parties engaged in mediation through a neutral third-party that resulted in MOUs that resolved all pending issues. The trial court further explained that it saw no evidence, other than defendant's disappointment, of a manipulated mediation process by plaintiff. Thereafter, the trial court entered the judgment of divorce. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's findings related to the validity of a settlement agreement at divorce for an abuse of discretion. *Vittiglio v Vittiglio*, 297 Mich App 391, 400; 824 NW2d 591 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008). We review a trial court's factual findings for clear error. *Vittiglio*, 297 Mich App at 400. A factual finding is clearly erroneous when this Court is left with a "definite and firm conviction that a mistake has been made, giving due regard to the trial court's special opportunity to observe the witnesses." *Smith*, 278 Mich at 204. Because a settlement agreement is construed as a contract, the same legal principles that govern the construction and interpretation of a contract also governs agreements in a domestic matter. *Myland v Myland*, 290 Mich App 691, 700; 804 NW2d 124 (2010). The interpretation of a contract is reviewed de novo as a question of law. *Id*.

-2-

## III.  THE PROPERTY MOU

Defendant contests the trial court's entry of the judgment of divorce on the basis of the Property MOU entered between the parties.  She argues (1) the Property MOU was ambiguous and incomplete; (2) the judgment of divorce did not conform to the Property MOU; (3) the Property MOU was the product of coercion and manipulation; and (4) the Property MOU resulted in an unconscionable division of assets.  We conclude none of these arguments have merit.

## A.  LEGAL FRAMEWORK

In this case, the parties reached a property settlement as a result of mediation and, as required by MCR 3.216(H)(8), the terms of that settlement were reduced to a writing that was signed by both parties.  As previously stated, the Property MOU is construed as a contract and is subject to general contract principles.  See *Myland*, 290 Mich App at 700.  "Generally, contracts between consenting adults are enforced according to the terms to which the parties themselves agreed." *Lentz v Lentz*, 271 Mich App 465, 471; 721 NW2d 861 (2006).

A party cannot disavow a property settlement agreement because she had a "change of heart." *Vittiglio*, 297 Mich App at 399 (quotation marks and citation omitted).  Rather:

> It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged." [*Id*. at 400 (quotation marks and citation omitted).]

"Courts must uphold divorce property settlements reached through negotiation and agreement of the parties because modifications of property settlements in divorce judgments are disfavored." *Id*. at 399.  Courts will not rewrite an unambiguous settlement agreement to "rebalance the contractual inequities." *Holmes v Holmes*, 281 Mich App 575, 594-595; 760 NW2d 300 (2008) (quotation marks and citation omitted).  If a settlement agreement is ambiguous, a court may interpret and clarify its terms, provided that the court does not change the parties' substantive rights as reflected in the agreement. *Neville v Neville*, 295 Mich App 460, 469; 812 NW2d 816 (2012).  A party seeking to avoid a contract on the basis of a contract defense bears the burden of proving that defense. *Morris v Metriyakool*, 418 Mich 423, 439-440; 344 NW2d 736 (1984).

## B.  AMBIGUITY

Defendant argues that the Property MOU did not constitute a binding property settlement and was ambiguous because it failed to address or divide all property.  We disagree.

The language of a contract is "given its ordinary and plain meaning." *Holmes*, 281 Mich App at 594 (quotation marks and citation omitted).  "If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous." *Id*. (quotation marks and citation omitted).  A contract is ambiguous when two provisions irreconcilably conflict with each other. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

The Property MOU provides as follows:

We, the undersigned, having participated in a mediation session and being satisfied that the provisions of the resolution of our dispute are fair and reasonable, hereby agree to abide by and fulfill the following:

-The parties agree that most of their differences over property have been agreed upon. The only thing that remains is the removal of [defendant's] possessions still at Ramsey's house into a storage facility, and her getting her dogs back.

-[Plaintiff] has offered to pay for the first two months of a storage unit, beginning as soon as possible, probably next week. [Defendant] will begin moving her belongings into that storage unit as soon as it is rented.

-The parties have stated that all the property belonging to [defendant] will be removed from Ramsey's house on or before the end of the summer, either late August or early September.

-Concurrent with the renting of a storage unit, the parties will go to 4Front Credit Union and separate any joint accounts into their own individual accounts.

Defendant first argues the Property MOU did not constitute a binding property settlement because it states that "most" of the parties' differences were settled. To defendant, this language indicates that the parties' property disputes were not actually settled. We disagree.

Defendant's argument refers to the phrase, "The parties agree that most of their differences over property have been agreed upon." When read in context, the plain terms of the settlement agreement show that the parties resolved the issues that led them to mediation. First, preceding the contested sentence, the parties agreed that the Property MOU resolved their issues by checking the form check box in front of the phrase, "Resolves all issues pending with the Court." Second, the remainder of the Property MOU explained how the contested matters were settled by the parties placing defendant's personal property in a storage unit and the parties separating their joint bank accounts. In context, no reasonable person could dispute that the Property MOU settled the parties' issues. See *Holmes*, 281 Mich App at 594.

Defendant likewise contends that the Property MOU was ambiguous and incomplete because it mentions "Ramsey's house" and "all of the property belonging to [defendant] . . . ," but makes no mention of additional assets and liabilities, such as vehicles and other debts, that defendant raised at the motion hearing. Again, we disagree.

First, the Property MOU's several references to "Ramsey's house" do not render the MOU ambiguous or incomplete. Instead, it shows that the parties recognized the house as plaintiff's separate property and that the house would not be subject to equitable division. Second, although the Property MOU makes no reference to particular vehicles or debts, that omission does not render the property settlement ambiguous or incomplete. It was incumbent on the parties to determine and include the relevant issues in the settlement agreement. The fact that the parties may have neglected to, or have chosen not to address these assets and liabilities in the settlement agreement does not give the trial court the authority to modify an unambiguous settlement. See *Holmes*, 281 Mich App at 594-595. Accordingly, there is no merit to defendant's assertion that the Property MOU was incomplete and ambiguous.

## C. NONCONFORMING JUDGMENT

Defendant next argues the trial court erred because the judgment of divorce did not conform to the terms of the Property MOU in relation to real property, personal property, and debt. We disagree, except in relation to debt. However, defendant is not entitled to relief because she was not aggrieved by this error.

First, defendant argues that the judgment of divorce does not conform with the Property MOU because the judgment of divorce provides that "[t]he parties have no real property to divide," whereas, the Property MOU refers to "Ramsey's house." This argument lacks merit. The judgment of divorce appropriately reflected that the parties identified no real property to divide in the judgment of divorce. As previously explained, the Property MOU unambiguously states that the house was plaintiff's property. No other real property was identified in the Property MOU. Accordingly, the judgment was consistent with the terms of the Property MOU.

Second, defendant argues that the judgment of divorce does not conform with the Property MOU because the judgment of divorce lists no personal property to be divided between the parties when the Property MOU refers to "all of the property belonging to [defendant] . . . ." This argument also lacks merit. The only reference to personal property in the Property MOU was the provision providing for removal of defendant's personal property from plaintiff's house. The parties identified no personal property that they wished to divide in the judgment of divorce. Accordingly, the judgment of divorce was consistent with the terms of the Property MOU.

Third, defendant argues that the judgment of divorce does not conform with the Property MOU because it sets forth a term related to debt when the Property MOU contains no such provision. We agree the judgment of divorce, which provides that plaintiff is responsible for paying a balance of $1,717 to Care Credit, is nonconforming because the Property MOU contains no provision addressing debt. However, we fail to see how defendant, as the complaining party, was prejudiced by this error such that she is entitled to relief. The trial court's error resulted in the assignment of debt to plaintiff.[2] No debt was erroneously assigned to defendant. See *Johnson v Corbet*, 423 Mich 304, 326-327; 377 NW2d 713 (1985) (explaining that, under MCR 2.613(A), an error is harmless and will not warrant relief unless it caused such unfair prejudice to the complaining party that allowing the error to stand would be inconsistent with substantial justice). Accordingly, we decline to modify the judgment of divorce because of error harmless to defendant.

## D. CONTRACT FORMATION AND DEFENSES

Defendant next argues that the trial court should not have followed the Property MOU because it was not entered into freely, willfully, and knowingly. Defendant also contends that the Property MOU was the result of fraud, coercion, and duress on the part of plaintiff. We disagree.

First, we address defendant's argument that she lacked basic knowledge to enter the settlement agreement. A valid contract has five elements: "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of

---

[2] Plaintiff has not filed an appeal or made an appearance in this matter.

obligation." *Calhoun Co v Blue Cross Blue Shield of Michigan*, 297 Mich App 1, 13; 824 NW2d 202 (2012) (quotation marks and citation omitted). Underlying these elements is the requirement that the parties must have mutual assent or a "meeting of the minds on all essential terms of a contract." *Id*. (quotation marks and citation omitted). "Where mutual assent does not exist, a contract does not exist." *Id*. (quotation marks and citation omitted).

At the motion hearing, defendant argued that the Property MOU was unenforceable because she entered the settlement agreement without a basic understanding of the agreement. To support this assertion, defendant argued that plaintiff failed to serve a Verified Financial Information Form as required under MCR 3.206(C)(2). The trial court, after learning that neither party served Verified Financial Information Forms on the other party, remarked "that happens in some cases." By enforcing the Property MOU, the trial court implicitly found that plaintiff's failure to comply with MCR 3.206(C)(2) did not show that the agreement was entered without mutual assent.

MCR 3.206(C)(2) requires each party to serve a Verified Financial Information Form within 28 days following the date of service of defendant's initial responsive pleadings. Defendant does not argue that she lacked basic information regarding the existence or value of plaintiff's assets before mediation. She only asserts that the house was misidentified as plaintiff's separate property and that personal property was omitted from the Property MOU. Her reliance, without more, on the fact that the house was identified as plaintiff's property and other assets were not addressed in the Property MOU, fails to support the argument that defendant entered the settlement agreement without mutual assent.

Significantly, both plaintiff and defendant entered mediation knowing the other had not made any disclosures under MCR 3.206(C)(2) nor participated in discovery. Likewise, there is no indication in the record that defendant moved for plaintiff's compliance with MCR 3.206(C)(2) in the trial court. MCR 3.206(C)(2) ("Failing to provide this Verified Financial Information Form may be addressed by the court or by motion consistent with MCR 2.313."). Before engaging in mediation, the parties were informed that all necessary appraisals of real and personal property must be completed in writing and exchanged between the parties by April 6, 2023, and that discovery would conclude on June 30, 2023. Defendant agreed to proceed with mediation knowing that she received no discovery or disclosure regarding plaintiff's assets. Accordingly, we fail to see how plaintiff's failure to comply with MCR 3.206(C)(2) rendered defendant's assent to the agreement unknowing.

Second, we address defendant's argument that the Property MOU was the result of coercion and the manipulation of the mediation process. This claim of error is without merit.

Absent a showing of mistake, fraud, or other contract defenses, a party is bound by a settlement agreement. *Vittiglio*, 297 Mich App at 400. "Coercion" involves the "application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Lafayette Dramatic Prod v Ferentz*, 305 Mich 193, 216; 9 NW2d 57 (1943) (quotation marks and citation omitted).

At the motion hearing, defendant argued that the Property MOU was the product of coercion and manipulation by plaintiff because he retained sole control of the parties' finances

-6-

during the marriage and told defendant that she would receive nothing if the parties divorced. Defendant did not submit affidavits or other evidence in support of these allegations. Defendant also argued that the ongoing references to "Ramsey's house" during mediation and in the Property MOU reinforced plaintiff's statements and suggested that the settlement was the result of coercion and manipulation. The trial court rejected defendant's arguments, explaining that the process of mediation was designed for a neutral third-party to listen to the parties and resolve issues objectively. Further, the trial court explained that it saw no evidence, other than defendant's disappointment, of a manipulated mediation process by plaintiff.

In light of the evidence available to the trial court, the trial court did not err in denying defendant's objection. The purpose of domestic relations mediation is for a neutral third-party to facilitate communication between parties to promote settlement. MCR 3.216(A)(2). The mediator is required to "discuss with the parties and counsel, if any, the facts and issues involved" and "continue until a settlement is reached . . . ." MCR 3.216(H)(6). Built into the process of domestic relations mediation is the requirement that the mediator screen for both a history and presence of coercive or violent relationships. MCR 3.216(H)(2).[3]

Defendant bore the burden of proving the settlement agreement was the result of coercion or manipulation. See *Morris*, 418 Mich at 439-440. At the time of the motion hearing, the only evidence before the trial court was that the parties engaged in several mediation sessions and those sessions resulted in two settlement agreements. Defendant presented no evidence in support of her allegations that the mediation process was manipulated by plaintiff. She failed to ask for an evidentiary hearing. Moreover, the trial court was not required to sua sponte conduct an evidentiary hearing. *Mitchell v Mitchell*, 198 Mich App 393, 399; 499 NW2d 386 (1993) (" [W]e hold that a trial court is obligated to conduct an evidentiary hearing to resolve an ambiguity or a factual dispute that arises in a proceeding related to a divorce only if a party specifically asks for an evidentiary hearing."). The Property MOU's reference to "Ramsey's house," in isolation, does not support defendant's assertion that the settlement agreement was the product of coercion or manipulation as it is consistent with the disposition of separate property in divorce proceedings. See *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010) (quotation marks and citation omitted) (explaining that typically, "each party takes away from the marriage that party's own separate estate with no invasion by the other party"). As such, we cannot conclude that the trial court erred in granting the motion to enter the judgment of divorce.

---

[3] On appeal, defendant alleges that the mediator failed to comply with MCR 3.216(H)(2). However, because defendant did not raise this argument in the trial court, it is unpreserved, and this Court has no obligation to review it. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-3. Moreover, defendant has presented no reason for this Court to overlook the preservation requirement. See *id*. at ___; slip op at 3 (quotation marks and citation omitted) (explaining this Court "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented"). This issue is waived.

-7-

E. UNCONSCIONABILITY

Plaintiff's final argument regarding the Property MOU is that its terms are unconscionable, and therefore the trial court abused its discretion when it entered the judgment of divorce on the basis of the Property MOU. We disagree.

To set aside a settlement agreement as unconscionable, the moving party must establish both procedural and substantive unconscionability. *Vittiglio*, 297 Mich App at 403. Procedural unconscionability exists when the weaker party to the settlement agreement had no realistic alternative but to accept the agreement. *Id*. at 404. "Substantive unconscionability exists where the challenged term is not substantively reasonable." *Id*. The challenged provision "must be more than merely disadvantageous;" rather, the inequity must be "so extreme as to shock the conscience." *Id*. (quotation marks and citation omitted).

First, defendant's appellate brief does not mention procedural unconscionability and makes no argument whether she had realistic alternatives to accepting the terms. Defendant cannot leave this Court to make her arguments for her. See *Wilson v Taylor*, 457 Mich 232, 243, 577 NW2d 100 (1998) (quotation marks and citation omitted) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). Her failure to adequately brief this issue constitutes abandonment. *Id*. Even if this issue were not abandoned, defendant is not entitled to relief. Domestic relations mediation is a nonbinding process. See MCR 3.216(A)(2). Defendant had the realistic alternative of litigating the divorce and requesting that the trial court evaluate whether or not defendant should receive some of plaintiff's separate assets. Likewise, defendant could have requested an alternative mediator. See MCR 3.216(E).

Second, regarding substantive unconscionability, the trial court was not presented with evidence that the settlement agreement was unconscionable. Defendant argues that plaintiff received assets worth almost $340,000 and defendant was left without anything and in debt. There is no evidence in the lower court record regarding what assets were at issue or the value of those assets. As previously discussed, defendant failed to seek an evidentiary hearing in support of her arguments. Accordingly, this Court has no ability to assess whether the Property MOU was substantively unconscionable. Defendant is not entitled to relief.

IV. THE CUSTODY MOU

Defendant also argues that the trial court erred by entering the judgment of divorce on the basis of the Custody MOU. Defendant argues (1) the Custody MOU was procured through coercion and manipulation on the part of plaintiff; (2) the Custody MOU did not constitute a settlement agreement; (3) and the trial court erred by entering the judgment of divorce under the assumption that it was bound by the agreement. Defendant is not entitled to relief on any of these claims of error.

A. LEGAL FRAMEWORK

Similar to the Property MOU, the Custody MOU was an agreement signed by both parties following mediation. See MCR 3.216(H)(8). However, unlike property settlement agreements,

the resolution of child custody disputes are governed by the Child Custody Act, MCL 722.21 *et seq*., which imposes a duty on the trial court to ensure that the resolution of any custody dispute is in the best interests of the children. See *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004). This Court has previously ruled "in cases where the parties are in agreement regarding custody and visitation and present the court with such an agreement, the trial court need not expressly articulate each of the best interest factors. Implicit in the court's acceptance of the parties' agreement is its determination that the arrangement is in the child's best interest." *Rettig v Rettig*, 322 Mich App 750, 755; 912 NW2d 877 (2018) (quotation marks and citation omitted). Accordingly, [a]lthough the trial court is not necessarily constrained to accept the parties' stipulations or agreements verbatim, the trial court is entirely permitted to accept them and presume at face value that the parties actually meant what they signed." *Id*. at 755-756.

## B. CONTRACT DEFENSES

Defendant first argues that the Custody MOU was the result of coercion and manipulation. We disagree.

The Custody MOU provides as follows:

> We, the undersigned, having participated in a mediation session and being satisfied that the provisions of the resolution of our dispute are fair and reasonable, hereby agree to abide by and fulfill the following:

> [Defendant and plaintiff] agree to the following parenting schedule for [the minor children]:

> When [defendant] gets her work schedule she will communicate with [plaintiff] to set up the week's parenting schedule. This may include phone calls, online game time and in person time together. The children will remain in the primary custody of [plaintiff] and he will communicate with [defendant] about any medical and educational issues that may arise.

> When [defendant] has her own living space, she work [sic] toward having overnight time with [the minor children]. They will come back to mediation or Friend of the Court when that happens.

At the motion hearing, defendant argued that the Custody MOU was procured through coercion and manipulation because the custody arrangement was incongruent with the established custodial environment during the marriage and it stripped defendant of any meaningful contact with her children. The trial court implicitly rejected these contentions by denying defendant's objection to entry of the judgment of divorce.

The trial court did not err by entering the judgment of divorce on the basis of the Custody MOU. Defendant presented no evidence in the trial court to support her allegations nor did she ask for an evidentiary hearing. The information available to the trial court was that the parties engaged in mediation, signed the settlement agreement, and were subject to a temporary custody order which provided that plaintiff had primary physical custody of the children. Moreover, the face of the Custody MOU alone does not support that the settlement agreement was the result of

coercion or manipulation. Instead, the Custody MOU demonstrates that the parties were able to come to an agreement that included defendant exercising parenting time. Likewise, the Custody MOU demonstrated the parties would work together to establish defendant's overnight parenting time once she established her own residence. Without additional evidence presented from defendant, the information available to the trial court did not support the presence of coercion, manipulation, or ongoing domestic abuse. We cannot conclude that the trial court erred in holding that the parties had reached a valid settlement agreement.

## C. INCOMPLETE AGREEMENT

Defendant next argues that the Custody MOU was not a final agreement because it expressly contemplates a return to mediation and does not actually establish a physical and joint custody arrangement. We disagree.[4]

As previously stated, the language of a contract is given its ordinary and plain meaning. *Holmes*, 281 Mich App at 575. Defendant correctly asserts that the Custody MOU contemplates a return to mediation to address overnight parenting time once defendant establishes her own residence. This, however, does not render the Custody MOU incomplete or temporary. Rather, the inclusion of a provision contemplating a return to mediation is consistent with the concept that parties frequently return to the courts to modify their custody arrangements on the basis of a change of circumstances. See MCL 722.27(1)(c). Defendant is not entitled to relief on this basis.

Defendant also argues that the Custody MOU was not final because it failed to establish a physical custody arrangement. This argument is without merit. First, defendant is incorrect in her assertion that the Custody MOU does not provide for a physical custody arrangement. The Custody MOU provides: "The children will remain in the primary custody of [plaintiff] . . . ." This provision refers to the then-existing arrangement under a temporary custody, support, and parenting time order entered by the trial court, which provided that plaintiff had primary physical custody of the minor children and the parties shared joint legal custody. Although the Custody MOU could have more clearly stated that plaintiff would retain primary physical custody, when read in the context, the meaning of the statement is clear. See *Holmes*, 281 Mich App at 594. Accordingly, defendant's claim that the Custody MOU failed to provide for physical custody is without merit. Likewise, her related argument that the judgment of divorce set forth a term regarding physical custody without authority is without merit.

Finally, defendant argues that the Custody MOU was incomplete because it failed to establish legal custody. The only provision in the Custody MOU that eludes to legal custody is the provision that provides: "[Plaintiff] will communicate with [defendant] about any medical and educational issues that may arise." "Joint legal custody" refers to parents' shared " 'decision-making authority as to the important decisions affecting the welfare of the child.' " *Lieberman v Orr*, 319 Mich App 68, 80; 900 NW2d 130 (2017). The Custody MOU's provision that plaintiff

---

[4] We note defendant did not properly present this issue to this Court because she failed to include it in the questions presented in her appellate brief. See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004).

would inform defendant about medical or education issues is not entirely clear as to what the parties have agreed to regarding the legal custody of the children.

In this case, the trial court entered a judgment of divorce which provides for joint legal custody. Defendant does not argue that she was entitled to a different custody arrangement, such as sole legal custody. As a result, defendant has failed to show she is entitled to modification of the judgment of divorce.

### D. THE TRIAL COURT'S DISCRETION TO FOLLOW THE CUSTODY MOU

Defendant finally argues that even if the parties had an agreement, the trial court erroneously believed that it was bound by the settlement agreement. As a threshold matter, defendant fails to cite any part of the record to support its assertion that the trial court believed itself bound by the agreement. Accordingly, this issue is abandoned on appeal. See *Wilson*, 457 Mich at 243.

Regardless, we recognize that unlike settlement agreements regarding property, the trial court is not bound by the parties' settlement agreement regarding child custody. *Phillips v Jordan*, 241 Mich App 17, 20-21; 614 NW2d 183 (2000). Further, a trial court abuses its discretion if it fails to exercise discretion on the incorrect belief that it had no discretion to exercise. *Rettig*, 322 Mich App at 756. However, in this case, the trial court did not indicate a belief that it was bound by the parties' Custody MOU. Defendant is not entitled to relief.[5]

Affirmed.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel

---

[5] We have reviewed all other issues that defendant raised in her appellate brief and find them to be without merit.