*In re* ROBERT H DRAVES TRUST

Docket No. 306014. Submitted November 14, 2012, at Detroit. Decided December 6, 2012, at 9:00 a.m.

Petitioners, the Robert H. Draves Trust and the Agnes L. Draves Trust, by the trustee for both trusts, James Hudnut, petitioned in the Macomb County Probate Court, seeking injunctive relief, damages, and permission to sell certain real property known as the Cedar Rest Resort. Petitioners alleged that the trusts had been unable to rent out the cottages at the resort and that the property taxes, the costs of repair, and the costs associated with obtaining liability insurance covering the property were prohibitive. Petitioners wanted to sell the property in order to allow Agnes Draves, the principal beneficiary of both trusts, to support herself. Respondents, Robert H. Draves, Jr., Thomas Draves, and Ruth Draves Harm, who are beneficiaries under the trusts, responded by noting that several actions concerning the trusts and an additional trust had been dismissed as a result of a settlement agreement that contained a provision stating that the Cedar Rest Resort could not be sold without the written agreement of three of the four following individuals: Robert H. Draves, Jr., James Hudnut, Charles Draves, and Ruth Draves Harm. Respondents alleged that three of the four named individuals had not consented in writing to the sale. Petitioners acknowledged that the parties had entered into the settlement agreement, but alleged that the settlement was "nonjudicial" and, under MCR 700.7111, was subject to modification. The court, Pamela G. O'Sullivan, J., eventually agreed with petitioners and entered an order permitting the sale on the basis that the circumstances had changed to the extent that the sale was necessary to effectuate the grantors' intent. Respondents appealed.

The Court of Appeals *held*:

1. The probate court erred by holding that the settlement agreement was nonjudicial. Although a probate court is entrusted with jurisdiction over matters involving trusts, its supervisory power is not automatic and it will supervise a trust only when an interested party has invoked its jurisdiction.

2. MCL 700.7111, which concerns nonjudicial settlement agreements, allows beneficiaries to resolve administrative issues without court involvement and promotes the extrajudicial resolution of trust issues. The statute falls within the statutory framework for relieving interested parties and the courts of the burdens and costs associated with continued court supervision and control of a trust. The present case does not involve the routine administration of a trust as contemplated by the statute. The parties settlement agreement was not simply an extrajudicial alteration of the trust, but was the result of active litigation, therefore, MCL 700.7111 was inapplicable. The settlement agreement was clearly "judicial." As long as a court can function as a court in deciding the question, receiving and applying factual testimony against identifiable standards, laws, and rules of law, the function conferred will not be regarded as nonjudicial.

3. The settlement agreement was actually a modification of the trusts. Although MCL 700.7411(1) provides a mechanism for modifying a noncharitable irrevocable trust, MCL 700.7411(2) provides that MCL 700.7411(1) does not apply to irrevocable trusts created before or to revocable trusts that became irrevocable before April 1, 2010. The Robert H. Draves Trust became irrevocable upon his death in 2009.

4. Former MCL 700.7207(1) provided on May 21, 2009, when the parties placed their settlement agreement on the record, that the probate court may approve an interpretation, construction, modification, or other settlement that is agreed upon in writing by all presently identified and competent beneficiaries whose interests in the trust may be affected to resolve a contest, controversy, or a question of construction or interpretation concerning the existence, administration, or termination of an irrevocable trust. Former MCL 700.7207(3) provided that the court shall approve such an agreement if it appears to have been reached in good faith and its effects are just and reasonable under all the relevant facts and circumstances. Finally, former MCL 700.7207(4) provided that an order in response to a petition under MCL 700.7207(1) is binding on each party who is represented in the proceeding and on others in accordance with MCL 700.1403(b) and that, after issuance of the order, the agreement as approved by the court shall be considered a part of the governing instrument of the trust. The parties' settlement agreement was binding because there was no question that all the trust beneficiaries and the trustee joined in the settlement agreement, the agreement was reached in good faith, and the effects of the settlement were just and reasonable at the time it was entered into.

5. An agreement to settle a pending lawsuit is a contract governed by the legal principles applicable to the construction and interpretation of contracts. Courts are bound to enforce settlement agreements absent evidence such as fraud or duress. By entering into the settlement agreement, the parties clearly entered into a contract to resolve all pending disputes. The probate court erred by allowing the sale in contravention of the parties' settlement agreement.

Reversed.

1. TRUSTS — JUDICIAL SUPERVISION.

A trust is not subject to continuing judicial supervision unless ordered by the court; a probate court will supervise a trust only upon an interested party's invocation of the court's jurisdiction (MCL 700.7201[2]; MCR 5.501[B]).

2. TRUSTS — NONJUDICIAL SETTLEMENT AGREEMENTS.

The provision of the Michigan Trust Code regarding nonjudicial settlement agreements allows beneficiaries to resolve administrative issues without court involvement; the provision promotes the extrajudicial resolution of trust issues within a framework that relieves interested parties and the courts of the burdens and costs associated with continue court supervision and control; the provision is inapplicable to a settlement agreement that is the result of active litigation and is not simply an extrajudicial alteration of the trust (MCL 700.7111).

3. COURTS — JUDICIAL FUNCTIONS.

A function conferred on a court will not be regarded as nonjudicial as long as the court can function as a court in deciding the question, receiving and applying factual testimony against identifiable standards, laws, and rules of law.

4. TRUSTS — COURTS — APPROVAL OF AGREEMENTS ADJUSTING BENEFICIAL INTERESTS.

MCL 700.7207(1), before its amendment effective April 1, 2010, provided that on the petition of an interested person, a probate court may approve an interpretation, construction, modification, or other settlement that is agreed upon in writing by all presently identified and competent beneficiaries whose interests in the trust may be affected to resolve a contest, controversy, or question of construction or interpretation concerning the existence, administration, or termination of an irrevocable trust; MCL 700.7207(3) provided that the court shall approve an agreement described in

§ 7207(1) if it appears to have been reached in good faith and its effects are just and reasonable under all of the relevant facts and circumstances; MCL 700.7207(4) provided that an order entered in response to a petition under § 7207(1) is binding on each party who is represented in the proceeding and on others in accordance with MCL 700.1403(b) and that, after issuance of the order, the agreement as approved by the court shall be considered a part of the governing instrument of the trust.

5. TRIAL — SETTLEMENT AGREEMENTS.

An agreement to settle a pending lawsuit is a contract governed by the legal principles applicable to the construction and interpretation of contracts; courts are bound to enforce settlement agreements absent evidence showing fraud or duress or that the agreement violates the law or public policy.

*James H. Hudnut* for petitioners.

*Cashen & Strehl* (by *William K. Cashen*) for respondents.

Before: FORT HOOD, P.J., and K. F. KELLY and DONOFRIO, JJ.

PER CURIAM. In the probate court, James Hudnut, the trustee for the Robert H. Draves Trust and the Agnes L. Draves Trust, requested that certain real property held by the trusts be sold. Respondents, Robert H. Draves, Jr., Thomas Draves, and Ruth Draves Harm, are beneficiaries under the two trusts. They objected to the sale on the basis of a prior settlement agreement, which contained an express provision that the property in dispute, the Cedar Rest Resort, could not be sold absent the consent of three of the four individuals named in the provision: Robert H. Draves, Jr., James Hudnut, Charles Draves, and Ruth Draves Harm. The probate court concluded that "[a]lthough the parties signed a Settlement Agreement that contains a release provision, the Court finds that circumstances have changed to the

extent that it is necessary to list the Cedar Rest Resort for sale in order to effectuate the intent of both Grantors." Citing MCL 700.7111(2), the probate court found that the parties' settlement agreement was "nonjudicial" and, therefore, subject to modification by the probate court. Because MCL 700.7111 has no application to the facts of this case, we conclude that the probate court erred by ordering that the Cedar Rest Resort be sold in contravention of the parties' settlement agreement.

### I. BASIC FACTS AND PROCEDURAL HISTORY

#### A. PRIOR LITIGATION

Robert H. Draves, Sr. (Draves, Sr.) and Agnes were husband and wife. The two trusts were created in 2000 and had as their stated goals the support and maintenance of the surviving spouse. Robert, Sr., has since died, but Agnes is still alive. The trusts own real property on the south arm of Lake Charlevoix, consisting of over 1,300 feet of lake frontage and 14 rental cottages known as the Cedar Rest Resort. Robert, Sr., and Agnes's oldest son, Robert H. Draves, Jr. (Draves, Jr.), managed the property before his father's death. Familial discord eventually created separate factions within the family. Agnes and her son Charles Draves allied with attorney James Hudnut against the other children—Draves, Jr., Thomas, and Ruth.

A variety of lawsuits were filed among the parties. On December 16, 2008, Hudnut filed two "Petitions for Removal of Trustee and Accounting" in the Macomb County Probate Court (Macomb County Probate Court Cases 08-195-691-TV and 08-195-692-TV). The petitions alleged that Draves, Jr., had been mismanaging the Cedar Rest Resort and that Agnes feared that

Draves, Jr., was using the income and funds derived from managing the property for his own personal benefit. Although Draves, Jr., had been advised of the termination of his managerial status, Agnes feared that he would not vacate the premises. The petitions alleged that, although the Cedar Rest Resort was to provide income for Agnes's care and maintenance, she "has received little support and maintenance from operations and has literally had to beg [Draves, Jr.] for money from time to time to sustain herself . . . ." The petitions alleged that Draves, Jr. "is opposed to a sale of the property solely for his personal benefit and not for the benefit of the beneficiaries of either Trust Plaintiffs and the respective beneficiaries." The probate court discharged Draves, Jr., as the manager of the Cedar Rest Resort, holding that the provisions of the Robert H. Draves Trust "clearly provide the authority of Agnes L. Draves to discharge the manager of the property known as 'Cedar Rest Resort' . . . at such time as she [becomes] dissatisfied with management of the resort . . . ."

At approximately the same time, on December 17, 2008, Hudnut, as cotrustee of the Ann Gural Trust, filed suit in the Oakland County Probate Court against Draves, Jr., as cotrustee of the Ann Gural Trust (Oakland County Probate Court Case 2008-320672-CZ). Gural had been a friend of the Draves family. She had established a trust that was to benefit her friends, Agnes Draves and Robert Draves, Sr. Hudnut's verified complaint alleged that Draves, Jr., had had power of attorney for Gural during her lifetime and was the special personal representative of her estate. The complaint alleged that Draves, Jr., "exercised undue influence upon Ann Gural in order to attempt to convert the accounts of the Trust" for his own benefit. In his answer, Draves, Jr., wrote that "[t]he goal of Hudnut's actions is to acquire the corpus of the Draves Family trusts, Cedar Rest Resort[,] and sell it without

regard to market conditions, thus injuring the trusts and its beneficiaries." Draves, Jr., and his wife, Pamela Draves, filed counterclaims against Hudnut, individually, alleging, in part, defamation. The counterclaims alleged that Hudnut made these accusations "for the purpose of obtaining leverage to use against Robert H. Draves Jr. in a power struggle for the control of the 'family jewel,' the Cedar Rest Resort" and "to terminate Robert H. Draves Jr.'[s] life-long position as manager of the Cedar Rest Resort and evict him and his wife from the premises." The counterclaims also alleged wrongful and tortuous interference with a contractual relationship and that Hudnut's "ulterior purpose of the action is to win a power struggle over the assets of the Draves family trusts."

On January 13, 2009, Draves, Jr., and his wife Pamela Draves filed third-party claims against Hudnut (Macomb County Probate Court Case 09-195-854-CZ). They alleged defamation, wrongful and tortuous interference with a contractual relationship, intentional infliction of emotional distress, abuse of process, breach of fiduciary duty, and loss of consortium.

### B. THE SETTLEMENT AGREEMENT

While these cases were pending, the parties entered into a settlement agreement in May 2009. The settlement agreement provided, in relevant part:

### BACKGROUND

A. There is currently pending before the Oakland County Probate Court case No. 2008-320-672-CZ.

B. There is currently pending before the Macomb County Probate Court case numbers 2008-195-691-TV; 2008-195-692-TV and 2009-195-854-CZP.

\* \* \*

F. That James Hudnut as Co-Successor Trustee of the Ann Gural Trust and as attorney for the Trustees of the Robert H. Draves Trust and Agnes Draves Trust alleges to have numerous claims and causes of action against Robert H. Draves, Jr. as identified in the Petitions filed in both the Oakland and Macomb County Probate Courts.

G. That Robert H. Draves, Jr. and Pamela Draves allege to have numerous claims and causes of actions against James Hudnut as identified in the Petitions/Complaints filed in both the Oakland and Macomb County Probate Courts.

H. That Robert Draves Jr. further alleges to have claims against the Robert Draves Trust, Agnes Draves and the Agnes Draves Trust for payment of services rendered in the maintenance and running of "Cedar Rest Resort". Said claim is for both monetary compensation and a 200 foot lakeside building site and 32 acres of adjourning meadow land and is not a part of any of the actions as identified in the Petitions/Complaints as filed in both the Oakland and Macomb County Probate Courts.

I. That issues exist between the parties of this agreement concerning the Trusts and/or estate plans established by Ann Gural, Robert Draves Sr. and Agnes Draves.

J. That the Petitioners and Respondents wish to settle the issues as raised in the above captioned causes of action as follows.

AGREEMENT

*   *   *

B. **Oakland County Litigation**:

*   *   *

(2) That the current value of assets held by Robert H. Draves Jr. and alleged to be assets of the Ann Gural Trust total $343,139.19. Said amount represents the funds being held pursuant to the Oakland County Probate Court Orders dated February 19, 2009.

(3) That within 30 days of the execution of this Settlement Agreement the following sums will be paid by Robert H. Draves, Jr. to the following individuals and under the following stipulations, terms and conditions:

(a) The sum of one hundred fifty thousand dollars ($150,000.00) shall be paid to the Agnes Draves Trust dated July 11th, 2000 to be used pursuant to the terms thereunder and as modified herein.

(b) Robert H. Draves Jr. shall pay the sum of $82,081.59 to Charles Draves.

(c) Robert H. Draves Jr. shall pay the sum of $54,528.80 to each of the following individuals: Thomas Draves and Ruth Harm.

\* \* \*

C. **Macomb County Litigation**: That upon the execution of this Settlement Agreement the following terms and conditions shall apply to the disposition, sale, management or administration of the real property known as the "Cedar Rest Resort" and all of the other assets held or controlled by the Estate plans and Trusts of Robert H. Draves and Agnes Draves both during and after the life of Agnes Draves:

(1) That Robert H. Draves Jr. shall resign as the Trustee of the Cedar Rest Resort as delineated in paragraphs 2.8.2 of both the Robert Draves Trust and the Agnes Draves Trust dated July 11th, 2000.

(2) That upon the execution of this Settlement Agreement the Petitioners and Respondents do hereby agree that the terms and conditions of . . . the Robert Draves Trust and Agnes L. Draves Trust dated July 11th, 2000 (as hereto attached as exhibit 1) without any amendments, revisions or modifications made thereto, except as made herein, shall control the disposition of the following assets:

(a) the real property or proceeds from the sale or mortgage of the real property known as "The Cedar Rest Resort" located in Charlevoix County, Michigan (the legal descriptions of said property are hereto attached as exhibit

3), regardless of the manner in which said real property or the proceeds derived therefrom is/are currently or subsequently held or titled or whom may be listed as beneficiaries or joint owners thereof, whether presently or in the future;

* * *

(4) Any amendments, revisions or modifications of this agreement, the Trusts or concerning or relating to the use, management of, disposition of, transfer, gifting, sale, encumbrance or conveyance of the real property known as the Cedar Rest Resort (or the proceeds obtained from the sale or mortgage of said real property) and any other assets currently held by said Trust(s) or obtained by said Trust(s) after the execution of this settlement agreement may only be made upon the unanimous express written approval of Agnes Draves, Robert H. Draves, Jr. Charles Draves, Ruth Harm and Thomas Draves;

* * *

(11) That notwithstanding the powers granted to the Trustee under Article 3 of the Robert H. Draves Trust and the Agnes Draves Trust the real property held by the Robert and Agnes Draves Trust Agreements dated July 11th, 2000 (known as the "Cedar Rest Resort") shall not be listed for sale, sold, mortgaged or encumbered in any way by the Trustees of either Trust unless 3 of the 4 following individuals agree in writing to the terms of any proposed mortgage, encumbrance, listing agreement and/or sale thereof: Robert H. Draves, Jr., James Hudnut, Charlie Draves and Ruth Harm.

* * *

3. Release and Covenant Not to Sue: That each subscribing individual, Trustee, Successor Trustee in their capacities as individuals/Trustees/Successor Trustees hereby releases each of the others from liability for any and all claims or causes of action (known or unknown) includ-

ing but not limited to the alleged claim of Robert Draves Jr. for monetary compensation, 1 200 foot lakeside building site and 32 acres of adjoining meadow land as detailed in paragraph H of the background above, that he/she/it may have arising out of the Estates/Trusts or the current litigation in the Oakland and Macomb County Probate Courts and hereby covenants not to institute or pursue any action or other legal proceeding (including arbitration) against any of the subscribing individuals with respect to any claim or cause of action released hereunder.

\* \* \*

7. <u>Entire Agreement</u>: This Settlement Agreement, as specifically made between Petitioners and Respondents, supersedes all prior agreements, arrangements and communications, whether oral or written, with respect to the subject matter agreed upon between Petitioners and Respondents. The terms contained in this Settlement Agreement, as made specifically between the Petitioners and Respondents, shall not be modified or amended except by the written agreement of all of the Petitioners and Respondents and, if required, the approval of the Oakland County or Macomb County Probate Court.

\* \* \*

15. <u>Retained Jurisdiction</u>. The Oakland and Macomb County Probate Courts shall retain jurisdiction to enforce any of the terms and conditions of this Settlement Agreement.

The settlement agreement was presented to and accepted by the Macomb County Probate Court on May 21, 2009:

*Mr. Hudnut*: We are pleased to announce that both have agreed, both of the Draves Trust case[s] against Robert Draves Jr. have been settled and the agreements have been signed . . . .

*The Court*: All right, and then that's in regards to File Number 195,691, that's a trust file in the matter of the Robert Draves Trust as well as 195,692, that's also a trust file in the matter of Agnes Draves Trust and File 195,854 and that's the civil matter concerning I believe Robert Draves Jr. and James H. Hudnut. I didn't know that was in a separate file. It's a civil matter so I guess--

*Mr. Hudnut*: The settlement agreement takes care of that as well then.

*The Court*: Wonderful. . . .

\* \* \*

. . . [S]o, all of the interested parties have signed this document indicating to the Court that they have agreed to the cases of the settlement [sic] with the entry of this settlement agreement and Order, there will be no other outstanding issues involving any of these files.

\* \* \*

*Mr. [Paul] Varchetti* [On behalf of Robert Draves, Jr., Thomas Draves, Pamela Draves, and Ruth Draves Harm]: There's Orders already prepared in the two trust files, we'll have to prepare an Order of the CZ file which I can prepare and file tomorrow.

*The Court*: That will be great and, again, these are Orders of dismissal, so, I'm signing them as we speak.

Is there anything else that needs to be placed on the record then on any of these cases?

*Mr. Hudnut*: I don't think so, your Honor, I think everything is pretty well tied up [] and handled.

The settlement agreement was also entered into the records of the other cases, which were dismissed with prejudice. The orders of dismissal in Macomb County Probate Court Cases 08-195-691-TV and 08-195-692-TV provided:

The parties herein appearing by their respective attorneys having appeared before the Court on a regularly scheduled Motion for various relief as stated in the Motions on file, and Counsel for the Plaintiff having stated that the Plaintiff Trust and the Defendant and the beneficiaries of the Plaintiff Trust have arrived at a mutual settlement of all of the issues and claims presently existing and such agreement is exhibited by their respective signatures to the Settlement Agreement in the possession of each attorney of the parties;

THEREFORE on motion of James H. Hudnut, attorney for the Plaintiff

**IT IS ORDERED** that the above entitled cause and the claims, Counterclaims and Third Party Claims are all dismissed with prejudice and without costs to any party.

The order of dismissal in Oakland County Probate Court Case 2008-320672-CZ likewise provided:

IT IS HEREBY ORDERED AND ADJUDGED that the attached Settlement Agreement dated May 20, 2009 (Exhibit A) entered into between Robert H. Draves, Jr., James Hudnut, Charles Draves, Agnes Draves, Thomas Draves, Ruth Harm and Pamela Draves is hereby approved;

IT IS FURTHER ORDERED AND ADJUDGED that any and all causes of action which were plead or which could have been plead in the instant matter shall be dismissed with prejudice and without costs to any party;

IT IS FURTHER ORDERED AND ADJUDGED that the January 22, 2009 Preliminary Injunction and the February 19, 2009 Orders entered by this Court restricting the use of certain assets received by Defendant Robert Draves, Jr. from Ann Gural or her Trust are hereby dissolved and said assets shall be used as agreed to by the parties in the attached Settlement Agreement;

IT IS FURTHER ORDERED AND ADJUDGED that this Honorable Court shall retain jurisdiction to administer any disputes with respect to the performance or compliance by any party under the Settlement Agreement.

## C. THE CURRENT LITIGATION

On May 16, 2011, petitioners, the Robert H. Draves Trust and the Agenes L. Draves Trust, filed the present action in the Macomb County Probate Court, seeking injunctive relief, damages, and permission to sell real property. Petitioners alleged that the trusts were unable to rent out the cottages in 2010 and that the property taxes, the costs of repair, and the costs associated with obtaining liability insurance were prohibitive. Petitioners wanted to sell the property in order to allow Agnes (the principal beneficiary of both trusts) to support herself. Petitioners acknowledged that the parties entered into a settlement agreement to resolve a number of cases pending between them; nevertheless, petitioners alleged that the settlement was "nonjudicial" and subject to modification.

Initially, the Macomb County Probate Court noted that it was not inclined to grant petitioners' request for relief:

> Again, my initial reaction is that that settlement was placed upon the record in this Court, it was agreed upon by all of the parties, and at that point in time it clearly reflected the parties' interest and they wanted it entered by this Court. And I believe that the circumstances have changed and that now that has prompted a request for an amendment or a reconsideration of that agreement but, sir, I'm not convinced at this point that you have given me a compelling enough argument to grant the relief that you have asked. But I am going to take a look at it, I want to make sure that the Court is proper in denying your request, I want to look at it under the Trust Code to see that, in fact, I am sound in my decision to deny your petition.

However, on September 1, 2011, the probate court issued a written opinion and order wherein it granted petitioners' request for relief. In an about-face, the probate court noted:

After a review of the applicable law, the Court finds that the Petition should be granted and the Cedar Rest Resort property be listed for sale. In reaching this determination, the Court found MCL 700.7111 applicable.

MCL 700.7111(2) reads:

"A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under this article or other applicable law."

After reviewing the provisions of the Trusts as well as the Settlement Agreement, the Court finds that a material purpose of the Trusts is to provide comfort and care to each of the Grantors during their lifetime by utilizing assets of the Trusts. . . .

\* \* \*

When these directives are taken as a whole, it appears to the Court that the intent of Robert and Agnes Draves was to utilize assets of the Trusts to provide comfort and care to the surviving spouse. Although the parties signed a Settlement Agreement that contains a release provision, the Court finds that circumstances have changed to the extent that it is necessary to list the Cedar Rest Resort for sale in order to effectuate the intent of both Grantors. To allow a stalemate to continue with respect to the sale of the Cedar Rest Resort property only serves to violate a material purpose of the Trusts.

Respondents now appeal as of right.

### II. STANDARD OF REVIEW

This appeal concerns the construction and applicability of MCL 700.7111. Questions of statutory interpretation are reviewed de novo. *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010). In *McCormick v Carrier*, 487 Mich 180, 191-192; 795 NW2d 517

(2010), our Supreme Court recited the governing principles regarding the interpretation of a statute:

> The primary goal of statutory construction is to give effect to the Legislature's intent. This Court begins by reviewing the language of the statute, and, if the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the statute. Judicial construction of an unambiguous statute is neither required nor permitted. When reviewing a statute, all non-technical words and phrases shall be construed and understood according to the common and approved usage of the language, MCL 8.3a, and, if a term is not defined in the statute, a court may consult a dictionary to aid it in this goal. A court should consider the plain meaning of a statute's words and their placement and purpose in the statutory scheme. Where the language used has been subject to judicial interpretation, the legislature is presumed to have used particular words in the sense in which they have been interpreted. [Citations and quotation marks omitted.]

Moreover, in *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009), the Michigan Supreme Court emphasized:

> A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. Moreover, courts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute.

### III. ANALYSIS

On appeal, respondents argue that the probate court erred by holding that the parties' settlement agreement was "nonjudicial." We agree.

The Michigan Trust Code (MTC), MCL 700.7101 to 700.7913, falls within the larger Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* Under EPIC, a probate court has exclusive jurisdiction over matters involving the "validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary . . . ." MCL 700.1302(b). The probate court also has concurrent jurisdiction over matters concerning *inter alia* the property rights and interests in a trust and may hear and decide any contract proceeding or action by or against a trust. MCL 700.1303(1)(a) and (i). Importantly, "[t]he underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving . . . a trust estate by consolidating the probate and other related actions or proceedings in the probate court." MCL 700.1303(3).

However, although the probate court is entrusted with jurisdiction over matters involving trusts, its supervisory power is not automatic. In fact, under the MTC, registration of a trust is not even required. MCL 700.7201(2) provides:

> A trust is not subject to continuing judicial supervision unless ordered by the court. Registration of a trust or another proceeding concerning a trust does not result in continuing judicial supervision unless ordered by the court. Subject to court jurisdiction as invoked by an interested person or as otherwise exercised as provided by law, the management and distribution of a trust estate, submission of an account or report to beneficiaries, payment of a trustee's fees and other trust obligations, acceptance and change of trusteeship, and any other aspect of trust administration shall proceed expeditiously consistent with the terms of the trust, free of judicial intervention, and without court order or approval or other court action.

Similarly, MCR 5.501(B) provides:

> Unsupervised Administration of Trusts. Unless an interested person invokes court jurisdiction, the administration of a trust shall proceed expeditiously, consistent with the terms of the trust, free of judicial intervention and without court order, approval, or other court action. Neither registration nor a proceeding concerning a trust results in continued supervisory proceedings.

Therefore, a probate court will supervise a trust only upon an interested party's invocation of the court's jurisdiction. Under the MTC, trusts are unsupervised by default; registration of a trust is permissive, not mandatory.

With this in mind, an examination of the MTC reveals that MCL 700.7111 applies to circumstances not present in this case. MCL 700.7111 provides, in relevant part:

> (1) Except as otherwise provided in subsection (2), interested persons may enter into a binding nonjudicial settlement agreement with respect to any matter involving a trust.

> (2) A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under this article or other applicable law. A nonjudicial settlement agreement shall not be used to accomplish the termination or modification of the trust.

> (3) Matters that may be resolved by a nonjudicial settlement agreement include any of the following:

> (a) The interpretation or construction of the terms of the trust.

> (b) The approval of a trustee's report or accounting.

> (c) Direction to a trustee to perform or to refrain from performing a particular act or to grant to or to withhold from a trustee any power.

(d) The resignation or appointment of a trustee and the determination of a trustee's compensation.

(e) Transfer of a trust's principal place of administration.

(f) Liability of a trustee for an action relating to the trust.

(4) Any interested person or trustee may request the court to approve or disapprove a nonjudicial settlement agreement. On a determination that the representation as provided in [MCL 700.7301 *et seq.*] was adequate, that the agreement does not violate a material purpose of the trust, and that the agreement contains terms and conditions the court could have properly approved, the court shall enter an order approving the agreement.

Specifically, MCL 700.7111 allows beneficiaries to resolve administrative issues without court involvement, freeing the probate court from supervisory control. Section 7111 promotes extrajudicial resolution of trust issues and falls within the statutory framework for relieving interested parties and the courts of the burdens and costs associated with continued court supervision and control.[1]

---

[1] However, a probate court naturally supervises "civil actions," even if the underlying trust estate is unsupervised. The former version of MCR 5.101 applicable to this case provided:

(A) Form of Action. There are two forms of action, a "proceeding" and a "civil action."

(B) Commencement of Proceeding. A proceeding is commenced by filing an application or a petition with the court.

(C) Civil Actions, Commencement, Governing Rules. The following actions, must be titled civil actions, commenced by filing a complaint and governed by the rules which are applicable to civil actions in circuit court:

(1) Any action against another filed by a fiduciary or trustee, and

(2) Any action filed by a claimant after notice that the claim has been disallowed.

The case at bar is not one involving the routine administration of a trust as contemplated by MCL 700.7111. In fact, the parties were involved in protracted litigation with cases pending in the Macomb and Oakland County Probate Courts at the time the settlement agreement was entered into. It is obvious that the parties intended that the settlement agreement resolve *all* pending matters. The settlement agreement provides: "That the Petitioners and Respondents wish to settle the issues as raised in the above captioned *causes of action* as follows . . . . " And, at the hearing placing the settlement agreement on the record, the following took place:

> *The Court*: All right, and then that's in regards to File Number 195,691, that's a trust file in the matter of the Robert Draves Trust as well as 195,692, that's also a trust file in the matter of [the] Agnes Draves Trust and File 195,854 and that's the civil matter concerning I believe Robert Draves Jr. and James H. Hudnut. *I didn't know that was in a separate file. It's a civil matter so I guess--*
>
> *Mr. Hudnut*: *The settlement agreement takes care of that as well then.* [Emphasis added.]

The probate court was presented with the settlement agreement, the parties indicated their desire to have the settlement agreement entered into the record, numerous pending actions were dismissed as a result of the settlement agreement, and the probate court retained jurisdiction to administer any disputes with respect to the performance or compliance of a party under the settlement agreement. It must be stressed that the parties' settlement agreement was not simply an extrajudicial alteration of the trusts, but was the result of active litigation; as such MCL 700.7111 was inapplicable.

In addition, Black's Law Dictionary defines "judicial" as: "**1.** Of, relating to , or by the court or a judge . . . . **2.** In court . . . . **3.** Legal . . . . **4.** Of or relating to a

judgment . . . ." Black's Law Dictionary (9th ed). It also defines *"non"* as: "Not; no. This term negates, sometimes as a separate word and sometimes as a prefix." *Id.* On the basis of these definitions alone, it would appear that the settlement agreement at issue in this case was clearly "judicial." Again, the probate court was presented with the settlement agreement, the parties indicated their desire to have the settlement agreement entered into the record, numerous pending actions were dismissed as a result of the settlement agreement, and the probate court retained jurisdiction to administer any disputes with respect to the performance or compliance of a party under the settlement agreement. As our Court has stated, "as long as the court can function as a court in deciding the question, receiving and applying factual testimony against identifiable standards, laws and rules of law, the function conferred will not be regarded as nonjudicial." *Chamberlin v Detroit Edison Co*, 14 Mich App 565, 576; 165 NW2d 845 (1968). There is simply nothing about this case that would bring it within the purview of MCL 700.7111.

Instead, the settlement agreement was actually a modification of the trusts. MCL 700.7411, the current MTC provision regarding the modification of trusts, provides, in part:

> (1) Subject to subsection (2), a noncharitable irrevocable trust may be modified or terminated in any of the following ways:
>
> (a) By the court upon the consent of the trustee and the qualified trust beneficiaries, if the court concludes that the modification or termination of the trust is consistent with the material purposes of the trust or that continuance of the trust is not necessary to achieve any material purpose of the trust.

(b) Upon the consent of the qualified trust beneficiaries and a trust protector who is given the power under the terms of the trust to grant, veto, or withhold approval of termination or modification of the trust.

(c) By a trustee or trust protector to whom a power to direct the termination or modification of the trust has been given by the terms of a trust.

However, MCL 700.7411(2) specifically provides: "Subsection (1) does not apply to irrevocable trusts created before or to revocable trusts that become irrevocable before April 1, 2010." Here, the parties agree that the Robert H. Draves Trust became irrevocable upon his death in 2009.

At the time the parties placed their settlement agreement on the record, May 21, 2009, former MCL 700.7207 provided:

(1) On petition of an interested person, the court may approve an interpretation, construction, modification, or other settlement that is agreed upon in writing by all presently identified and competent beneficiaries whose interests in the trust may be affected to resolve a contest, controversy, or question of construction or interpretation concerning the existence, administration, or termination of an irrevocable trust.

* * *

(3) The court shall approve an agreement described in subsection (1) if it appears to have been reached in good faith and its effects are just and reasonable under all of the relevant facts and circumstances.

(4) The order in response to a petition under subsection (1) is binding on each party who is represented in the proceeding and on others in accordance with [MCL 700.1403(b)]. After issuance of the order, the agreement as approved by the court shall be considered a part of the governing instrument of the trust.

There is no question that all the trusts' beneficiaries and the trustee agreed to the settlement agreement. There is also no real question that the agreement was reached in good faith and that the effects were just and reasonable at the time the settlement agreement was entered into. As such, the parties' settlement agreement was binding on the parties.

The global settlement was the parties' expression of a desire to end litigation with terms that each could live with, creating a contractual agreement between them. MCR 2.507(G) provides that "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." "An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). The bedrock of contract law is that "parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). In fact, "[t]he notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable." *Id.* at 52. Thus, "[t]he litigant who . . . asserts [a mistake of fact defense] to a stipulation freely entered into in open court carries a heavy burden of persuasion. Every presumption of judicial care, of professional competence, and of decretal stability is against the overthrow, in the appellate court, of such stipulation and of orders

and decrees based thereon." *Wagner v Myers*, 355 Mich 62, 68; 93 NW2d 914 (1959). Courts are bound to enforce settlement agreements absent evidence such as fraud or duress. *Massachusetts Indemnity & Life Ins Co v Thomas*, 206 Mich App 265, 268; 520 NW2d 708 (1994).

As can be seen from the parties' prior litigation, the management, ownership, and control of the Cedar Rest Resort has been the focus from the start. Whether it should be sold has been in dispute since 2008. By entering into the settlement agreement, the parties clearly entered into a contract to resolve all pending disputes. As such, MCL 700.7111(2) was inapplicable to this case and the probate court erred by allowing for the sale of the Cedar Rest Resort in contravention of the parties' settlement agreement.

Because we conclude that the probate court erred by applying MCL 700.7111, we find it unnecessary to address the remainder of respondents' issues on appeal.

Reversed.

FORT HOOD, P.J., and K. F. KELLY and DONOFRIO, JJ., concurred.