# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF MARTIN WALLICH TRUST
NO. 1 & PHYLLIS S. WALLICH TRUST NO. 1.

---

PATRICK J. WALLICH,

      Appellant,

v

CHRISTOPHER WALLICH and MARTIN J.
WALLICH,

      Appellees.

UNPUBLISHED
November 9, 2017

No. 333512
Lenawee Probate Court
LC No. 12-047919-CZ

---

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Appellant, Patrick J. Wallich, appeals as of right from the trial court's April 11, 2016 order regarding Appellee, Christopher Wallich's, motion for removal of forensic auditor. We affirm.

## I. BACKGROUND

This case involves years of contentious litigation between three brothers. Patrick, Christopher, and appellee Martin J. Wallich, Jr., are the children of Martin F. Wallich, Sr., and Phyllis S. Wallich. Martin, Sr., founded Tecumseh Plywood Company, Inc. (TPC), and Patrick managed the company for approximately 40 years. In 2003, the parents updated their individual trusts, wherein they remained trustees and their three sons were the intended beneficiaries. TPC is trust property. After both parents' death, Patrick would receive 60% of TPC's stock and real property, while Christopher and Martin, Jr., would each receive a 20% share of TPC's stock and real property. Each son would receive a third of all non-TPC trust assets.

Phyllis passed away shortly after on March 17, 2003. At the time, each of the three sons had a 2% interest in TPC, the Martin, Sr., trust had a 69% interest in TPC, and the Phyllis trust had a 25% interest in TPC. On April 11, 2003, Martin, Sr., signed a proxy, which appointed Patrick sole power of attorney with the authority to vote Martin, Sr.'s shares on all TPC matters. On July 19, 2004, the trial court determined that Martin, Sr., was incapacitated and appointed the three sons co-guardians. They were later appointed co-trustees of the Martin, Sr., trust.

On May 23, 2012, Christopher and Martin, Jr., filed a petition seeking to remove Patrick as a co-trustee and to terminate his power of attorney. The petition alleged that Patrick breached his duties as co-trustee and as Martin, Sr.'s power of attorney because (1) Patrick failed to provide accountings despite his role as co-trustee and having control over TPC matters; (2) engaged in self-dealing, and (3) engaged in situations that created a conflict of interest. Patrick filed an answer, affirmative defenses, and counter-petition. In his counter-petition, Patrick alleged, *inter alia*, that his brothers had attempted to gain control of TPC since their parents executed their estate plan in 2003, attempted to cancel the proxy that Martin, Sr., executed, refused to cooperate in TPC's refinancing, and routinely withdrew money from TPC for their own personal benefit without authorization.

On January 9, 2013, Martin, Sr., passed away. On May 15, 2013, the trial court ordered the parties to retain Gross, Puckey, Gruel & Roof, P.C. (Gross Puckey), to perform a business valuation of TPC. The trial court also ordered the parties to identify any issues or claims arising from the trusts and TPC or else have such claims deemed waived and the trust property distributed under the terms of the trusts.

The parties filed numerous pleadings, and instead of addressing each issue at the October 11, 2013 evidentiary hearing, the trial court appointed Bob Best as special master to oversee a resolution among the parties. The trial court stated, "I've not given my judicial powers to the special master, but I will entertain their recommendation as to all aspects of the resolution proposed by the special master." Best held a two-day hearing on May 5, 2014, and May 6, 2014. The hearing was tape recorded and later transcribed. On the second day, the parties reached a stipulation on a number of matters, including specific amounts that Christopher and Martin, Jr., would pay back to the Martin, Sr., trust and to TPC. The parties also agreed that Best would appoint a forensic accountant to conduct a limited forensic audit and determine how much Patrick owed TPC after being paid a reasonable compensation, which would also be determined by the accountant. The stipulation further included some terms regarding the use of the family lake cottage, a discount to Christopher on materials from TPC, reimbursement to Christopher for the out-of-pocket expense for the earlier business valuation, and more.

On May 15, 2014, the attorney for Christopher and Martin, Jr., sent an email to Patrick's attorney explaining that Christopher and Martin, Jr., intended to honor the stipulation once the parties reviewed certain source documents so that they could "resolve the minor discrepancies in the outstanding debts of the parties." On June 20, 2014, Best submitted his Special Master's First Status Report to the trial court and outlined the stipulation. The report, however, did not include any terms relating to Christopher's TPC discount. Best sent a letter to the trial court on September 24, 2014, requesting that it enter an order requiring Christopher and Martin, Jr., to sign the necessary documents in order for the trust to pay for the forensic accountant.

Christopher and Martin, Jr., filed separate objections to the special master's proposed order, claiming that the special master modified the stipulation and that it was no longer binding. Christopher also argued that he should be able to obtain his own forensic accountant to conduct a full audit, rather than using the stipulated forensic accountant for the purpose of conducting only a limited audit. Patrick filed a response, claiming the stipulation was binding, Christopher had been reimbursed for the business valuation, and the stipulation was legally enforceable. On November 17, 2014, the trial court held a hearing, and it ordered a full forensic audit. Patrick's attorney then placed on the record "for preservation purposes" his objection to conducting a full forensic audit because the stipulation was a binding contract. After the hearing, but before the trial court entered its order, Patrick filed a motion to enforce the stipulation and a motion for reconsideration. Then on February 23, 2015, the trial court entered an order holding, "A full and complete forensic audit including but not limited to the assets and operations of [TPC] shall be conducted in this matter by John T. Alfonsi, CPA of Cendrowski Corporate Advisors." The trial court also held, "As a matter of fact there was no meeting of the minds regarding the purported stipulation discussed by the parties at an evidentiary hearing held before the Special Master on May 6, 2014 and therefore the court finds that there is no stipulated agreement."

On March 16, 2015, Patrick filed a motion for reconsideration of the February 23, 2015 order and argued that the trial court did not have the benefit of the special master's recommendations or the transcript of the stipulation hearing. On July 31, 2015, the case was reassigned to a new judge.[1] The trial court then entered a scheduling order discharging Best as the special master and requiring the parties to submit all motions by August 19, 2015. Afterwards, Patrick filed three motions, including his second motion to enforce the stipulation. A hearing was held on October 15, 2015, and the trial court ordered: "A forensic audit of [TPC] shall be conducted in this matter by [Gross Puckey]. In the event the parties cannot agree, this court shall select an accountant. The cost of this accounting shall not exceed $115,000 without further order of this court, and shall be paid for by TPC."

On February 1, 2016, Christopher filed a motion for the removal of the forensic auditor, claiming the audit was not being conducted in a manner that complied with the trial court's order. The trial court held a hearing on February 10, 2016, but it determined that Christopher's motion was moot because Gross Puckey was withdrawing from the audit. The trial court then raised the issue of who would replace Gross Puckey. Martin, Jr., requested Thomas Frazee, CFA, Christopher requested an auditor from Plante Moran, and Patrick requested Gary Rogow, CPA. After hearing argument on each of the forensic auditors, the trial court concluded that Plante Moran would finish the audit because it was a national accounting firm. On April 11, 2016, the trial court entered an order appointing Plante Moran and mandating that the audit not exceed $109,000. On May 2, 2016, Patrick filed a motion for reconsideration, claiming that the trial court failed to rule on his two motions to enforce the stipulation and that the stipulation controlled the terms of the forensic audit. The trial court denied the motion, and this appeal followed.

---

[1] There is no indication in the lower court file that the trial court ruled on Patrick's motion for reconsideration.

## II. ANALYSIS

Patrick argues that the trial court erred when it entered an order appointing Plante Moran as the firm to conduct the full forensic audit. We disagree.

On appeal, Patrick claims the 2014 stipulation, which included the terms for a limited forensic audit, was binding on all parties. However, the trial court entered an order denying that very argument on February 23, 2015, and Patrick did not appeal that order.[2] Further, the trial court entered a subsequent order on October 15, 2015, appointing a different forensic auditor, and Patrick failed to appeal that order as well. "A party cannot wait until the entry of a subsequent final order to untimely appeal an earlier final order." *Surman v Surman*, 277 Mich App 287, 294; 745 NW2d 802 (2007).

Even if somehow this argument could be raised, Patrick failed to raise it at the latest hearing on February 10, 2016, and instead argued that Rogow should be appointed to conduct a full forensic audit of TPC. He no longer argued that the stipulation was binding, and he cannot now harbor error for something that he asked for below, i.e., the appointment of a different accounting firm to complete a full forensic audit. *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002). If Patrick argued on appeal that the trial court erred when it chose Plante Moran, instead of Rogow, that issue had to be raised, addressed, and decided. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). To that extent, plaintiff's claim would be preserved, but he does not argue on appeal that the trial court erred when it decided to appoint Plante Moran, rather than Rogow, to conduct the forensic audit. We do not have to consider an issue a party failed to properly raise on appeal. *Neiderhouse v Palmerton*, 300 Mich App 625, 637 n 3; 836 NW2d 176 (2013).

---

[2] The February 23, 2015 order appointing Alfonsi of Cendrowski Corporate Advisors to conduct a full forensic audit of TPC using trust funds is a final order pursuant to MCR 5.801(B)(2)(e) and (B)(2)(x), which provides:

> (B) **Order Appealable to the Court of Appeals**. Orders appealable of right to the Court of Appeals are defined as and limited to the following:
>
> * * *
>
> (2) a final order affecting the rights or interests of an interested person in a proceeding involving . . . a trust created under a will. These are defined as and limited to orders resolving the following matters:
>
> * * *
>
> (e) approving or denying a settlement relating to a governing instrument;
>
> * * *
>
> (x) allowing or disallowing an account, fees, or administration.

Patrick's argument would also fail on its merits. "[A]n agreement to settle a pending lawsuit constitutes a contract, and therefore the agreement is governed by legal principles applicable to the interpretation and construction of contracts." *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 669; 649 NW2d 760 (2002). We review the existence and interpretation of a contract de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). A settlement is a contractual agreement that must also satisfy MCR 2.507(G), *In re Draves Trust*, 298 Mich App 745, 767; 828 NW2d 83 (2012), and the interpretation of a court rule is subject to de novo review. *Michigan Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 483-485; 637 NW2d 232 (2001). However, a trial court's finding concerning the validity of a parties' consent to a settlement agreement will not be overturned absent a finding of an abuse of discretion. *Vittiglio v Vittiglio*, 297 Mich App 391, 397; 824 NW2d 591 (2012).

MCR 2.507(G) states: "An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." Patrick admits that the special master did not have judicial authority, and therefore, the agreement was not made in "open court." However, he claims that there was an "agreement . . . in writing, subscribed . . . by that party's attorney." According to Patrick, the stipulation was tape recorded and later transcribed, thereby satisfying the writing requirement. Patrick also claims that the subscription requirement was satisfied when Christopher's attorney sent an email stating that Christopher and Martin, Jr., intended to follow the stipulation and included an electronic signature at the bottom. This argument fails.

"Subscribe means to append, as one's signature, *at the bottom of a document* or the like; sign." *Kloian*, 273 Mich App at 459 (citation and quotation marks omitted). An electronic signature at the bottom of an email will satisfy the subscription requirement. *Id*. at 459-460, citing MCL 450.837(4). However, the email cannot simply be subscribed; it must also contain the terms of the settlement, *Kloian*, 273 Mich App at 459-460, and the email did not contain any of the terms. While the email referenced the stipulation, the email also indicated that the issue of the parties' debt to the company was not yet resolved—an issue that was apparently resolved before the special master. The email explained that documents sent to Patrick would "resolve the minor discrepancies in the outstanding debts of the parties," and that "[o]nce resolved, we have a stipulation in place that precludes re-litigating those debts." Therefore, not only did the email fail to include the terms of the agreement, it showed the parties were not yet in full agreement on the terms of the stipulation. Making matters worse, the special master's report did not contain all the terms that were agreed on at the stipulation hearing, such as those involving Christopher's TPC discount and all the details underlying the forensic audit. Given the circumstances on which the stipulation was made, we cannot conclude that the requirements under MCR 2.507(G) were satisfied. Even if we could, there was not a "meeting of the minds" sufficient to form a contract when considering the stipulation transcript, email, and the special master's report. "A contract requires mutual assent or a meeting of the minds on *all* the essential terms." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (emphasis added). The stipulation

transcript, email, and the special master's report either contained varying terms or they omitted pertinent terms altogether.  Therefore, even if we could review the trial court's decision as to the enforceability of the stipulation, its decision did not amount to an abuse of discretion.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron