# STATE OF MICHIGAN

# COURT OF APPEALS

JAIMEY NOEL ROTH,

Plaintiff-Appellee,

v

SHERYL LYNN ROTH,

Defendant-Appellant.

UNPUBLISHED
January 20, 2015

Nos. 312008; 316003; 321564
Oakland Circuit Court
LC No. 2011-784597-DM

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

These consolidated cases arise from a bitter divorce dispute between plaintiff, Jaimey Noel Roth, and defendant, Sheryl Lynn Roth. In Docket No. 312008, Sheryl Roth appeals as of right the trial court's May 9, 2012 judgment of divorce. In Docket No. 316003, Sheryl Roth appeals by leave granted the trial court's April 9, 2013 order terminating spousal support. In Docket No. 321564, Sheryl Roth appeals as of right the trial court's April 10, 2014 order granting Jaimey Roth sole legal and physical custody of the children. We affirm in each case.

## I. FACTS

### A. DIVORCE JUDGMENT, DOCKET NO. 312008

The parties married in February 2001 and had four children. In May 2011, Jaimey Roth filed for divorce, seeking distribution of the marital estate pursuant to a prenuptial agreement. Judge Edward Sosnick, the initial trial court judge, ordered the parties to engage in a "nesting" arrangement, in which the children resided in the marital home and the parties resided in the home on alternating weeks. Each party accused the other of destroying or taking property from the marital home. The trial court appointed a guardian ad litem for the children and required both parties to participate in a psychological evaluation and weekly drug screens. Sheryl Roth tested positive for alcohol in August 2011, and the trial court instructed the parties not to use alcohol. After Sheryl Roth tested positive for alcohol again in September 2011, the trial court ordered Sheryl Roth's parenting time to be supervised until she completed parenting classes.

Sheryl Roth admitted that she had substance abuse and gambling issues that she needed to resolve. However, Sheryl accused Jaimey of becoming romantically involved with Renee Winkler, who had past arrests on drug charges. Richard Riggs, Sheryl's therapist, opined that Sheryl showed a good deal of motivation and understanding. Deborah Vogler, Sheryl's

-1-

parenting time supervisor, testified that Sheryl was patient with the children even though they made disparaging remarks to her.

On March 14, 2012, the trial court determined that the parties' prenuptial agreement was valid. The prenuptial agreement precluded spousal support. On March 28, 2012, the parties placed a settlement on the record.

In pertinent part, the parties' settlement provided for joint physical and legal custody of the children, provided that neither party would use illegal drugs, and provided that Sheryl Roth would not gamble or drink alcohol. The settlement also provided that Sheryl Roth would receive non-modifiable spousal support of $2,000 a month for five years, subject to conditions.

Both parties testified that they understood the terms of the settlement and that they were waiving certain disputes and other rights. However, at a hearing on April 18, 2012, Sheryl asked to alter or add certain provisions to the consent judgment. The trial court indicated that the parties were bound by the settlement they had placed on the record.

On May 2, 2012, Sheryl moved to set aside the consent judgment, alleging that she was confused and shaken at the hearing and did not believe that she was entering into a final judgment. Both Sheryl and her attorney provided un-notarized affidavits alleging that they were surprised by the entry of the settlement. The trial court denied Sheryl's motion, reasoning that Sheryl had been represented by two attorneys at the hearing and had indicated on the record that she understood the settlement. The trial court also found that the settlement was fair in light of the facts of the case.

Sheryl moved for reconsideration. She alleged for the first time that her attorney found "newly discovered evidence" in her previous attorney's file that indicated that Jaimey Roth had committed financial fraud on the court. At the June 13, 2012 hearing on the motion, Sheryl contended for the first time that Jaimey had fraudulently failed to give specific personal property to her. The trial court denied Sheryl's motion for reconsideration.

## B. TERMINATION OF SPOUSAL SUPPORT, DOCKET NO. 316003

On August 31, 2012, Jaimey Roth filed an emergency motion to terminate spousal support and to suspend Sheryl's parenting time, alleging that she had violated the provisions of the divorce judgment by consuming alcohol, had thrown a phone at one child, and committed retail fraud in the presence of another child. At the hearing on the motion, Sheryl testified that she consumed wine on two or three occasions, but characterized the drinking as minimal. The trial court deferred its decision on spousal support pending an evidentiary hearing.

The trial court held an evidentiary hearing on September 25, 2012, which it indicated that it would continue at a later date. On January 16, 2013, the case was reassigned to Judge Cheryl A. Matthews. At a hearing on March 13, 2013, Sheryl Roth moved to continue the evidentiary hearing or, alternatively, to strike it. The trial court responded "[o]kay," and subsequently clarified whether counsel was also asking to strike Sheryl's previous admission that she had consumed alcohol. Counsel indicated that Sheryl was not moving to strike her admission. On April 9, 2013, the trial court ruled that it would enforce the divorce judgment as written.

Because Sheryl admitted that she had consumed alcohol, which violated the divorce judgment, the trial court terminated Sheryl Roth's spousal support.

## C.  CHANGE OF CUSTODY, DOCKET NO. 321564

On November 8, 2012, Jaimey Roth moved the trial court to modify the children's custody to grant him sole physical and legal custody.  The trial court conducted 11 days of evidentiary hearings between June 28, 2013, and March 18, 2014.  At the evidentiary hearings, the parties made various accusations against each other.

Sheryl Roth denied that she had consumed alcohol, but testified that she had sipped wine on two occasions.  Sheryl also admitted that she had committed retail fraud while shopping with one of the children.  But Sheryl testified that Jaimey encouraged the children to disparage her, and Sheryl's landlord testified that Jaimey disparaged Sheryl to her and threatened to install spyware on Sheryl's phone.

Jaimey testified that he continued to reside in the marital home with Winkler, his fiancée. Jaimey admitted that Winkler had pleaded guilty to marijuana possession over two years previously and was then convicted of driving under the influence while on probation for that offense.  Jaimey also admitted that he initially said negative things about Sheryl in the presence of the children, but claimed that he no longer did so.  However, Jaimey opined that he could not cooperate with Sheryl or agree with her about decisions affecting the children's welfare because they cannot communicate and have philosophical differences about how to raise the children.

Arleen Platt testified that she supervised Sheryl's parenting time from November 2012 to September 2013.  According to Platt, the older children were unhappy with Sheryl.  They engaged in inappropriate behavior, like swearing and spitting, but Sheryl did not use appropriate discipline with them.  Jennifer Elliott, the children's counselor, testified extensively about the children's welfare.

Dr. Gerald Shiener, a psychiatrist, testified that he conducted psychological evaluations of both parties.  Dr. Shiener opined that Jaimey's home would provide a more stable environment for the children.  According to Dr. Shiener, Sheryl has an addictive disorder and engages in alcohol dependency and compulsive gambling.  Dr. Shiener opined that Sheryl has a guarded prognosis because she has difficulty accepting responsibility for her behavior or understanding that she needs treatment.

In a detailed opinion, the trial court determined that the children have an established custodial environment with Jaimey Roth.  The trial court thoroughly considered the children's best interests and determined that clear and convincing evidence supported that Jaimey should have sole physical custody of the children.  The trial court granted Sheryl a gradual parenting time schedule.  The trial court found that the parties could not agree about basic decisions concerning the children's welfare and granted Jaimey sole legal custody of the children.

## II.  CONSENT JUDGMENT, DOCKET NO. 312008

## A.  STANDARD OF REVIEW

This Court reviews for an abuse of discretion the trial court's decision regarding the validity of a consent agreement to a settle a divorce. *Vittiglio v Vittiglio*, 297 Mich App 391, 400; 824 NW2d 591 (2012). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

## B. VALIDITY OF THE CONSENT JUDGMENT

Sheryl Roth raises various challenges to the validity of the parties' consent judgment. "A consent judgment is the product of an agreement between the parties." *Sylvania Silica Co v Berlin Twp*, 186 Mich App 73, 75; 463 NW2d 129 (1990). In essence, an agreement to settle a pending case is a contract. *In re Robert H Draves Trust*, 298 Mich App 745, 767; 828 NW2d 83 (2012). MCR 2.507(F)[1] provides that a consent agreement is binding if it is made in open court. Generally, a party may only obtain relief from a consent judgment for mutual mistake, fraud, unconscionable advantage, or ignorance of a material term of the settlement agreement. *Plamondon v Plamondon*, 230 Mich App 54, 56; 583 NW2d 245 (1998).

First, Sheryl Roth contends that her settlement agreement lacked mutual assent because she and her attorneys were surprised by the consent judgment proceeding, she was confused at the time the judgment was entered, and she did not believe that her settlement would be final. We disagree.

A valid contract requires a meeting of the minds on all essential terms. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006). A court considers the parties' express words and visible acts, and not the parties' subjective states of mind, to determine whether there was mutual assent to a contract. *Id.* at 454.

In this case, the parties placed their consent agreement on the record at the March 28, 2012 hearing. The settlement terms were stated on the record, and Sheryl Roth's attorneys both participated by clarifying terms. Subsequently, the trial court questioned Sheryl:

> *THE COURT*: All right, and you understand that if you accept the settlement you'll be bound by its terms?
>
> *MS. ROTH*: I understand.
>
> *THE COURT*: All right. Now, you've had a chance to talk to your lawyers I know you talked to some of your family and with the other side's permission you and I, along with your lawyers, talked today and I indicated to you that you have the absolute right to go to trial and that if you chose to go to trial you could do better, worse, the same, do you understand that?

---

[1] At the time of this suit, this court rule was MCR 2.507(G). MCR 2.507(G) was redesignated as MCR 2.507(F), effective September 11, 2013, but the rule's language was not changed.

*MS. ROTH*: I do.

*THE COURT*: And likewise you understood there was a prenup here and you took that into consideration in terms of making your determination to resolve this case?

*MS. ROTH*: (Inaudible).

*THE COURT*: All right, is this your own free choice and decision to do this, to settle this case on the terms that were placed on the record?

*MS. ROTH*: Yes, it is.

*THE COURT*: Yes, it is. And you understand that you'll be bound by your decision as to property and it's changeable on a material change with regard to parenting time, custody and child support only, do you understand that?

*MS. ROTH*: I do.

One of Sheryl's attorneys also questioned her about her understanding of the settlement agreement:

*MS. CRONIN*: Just so that we're clear, that you fully understand all the terms today?

*MS. ROTH*: Yes, I do.

*MS. CRONIN*: And you're entering it at your own free will?

*MS. ROTH*: Yes.

We conclude that the trial court did not abuse its discretion when it determined that the parties' consent agreement was valid. The record indicates that both of Sheryl's attorneys actively participated in the hearing and did not manifest any form of surprise. Regardless of Sheryl's allegations regarding her subjective state of mind, her responses to questioning indicated that she understood the essential terms of the settlement agreement. We are not definitely and firmly convinced that the trial court made a mistake when it found that Sheryl assented to the settlement and understood its terms.

Second, Sheryl contends that the consent judgment was the product of duress and undue influence because counsel pressured her to accept the consent judgment and misled her regarding the judgment's finality. We reject this assertion.

Undue influence occurs when a party was subjected to threats, misrepresentation, flattery, fraud, or coercion. *In re Karmey Estate*, 468 Mich 68, 74; 658 NW2d 796 (2003). However, when a party asserts that the party's attorney coerced or unduly influenced him or her, courts will not overturn a consent judgment absent a showing that the opposing party participated in the coercion or influence. *Vittiglio*, 297 Mich App at 401-402. In this case, Sheryl has made no

showing that Jaimey was a party to the alleged coercion. Further, Sheryl testified in response to questions by the trial court and counsel that she was entering into the consent judgment of her own free will and that she understood she would be bound by the judgment. We note that the trial court had the opportunity to observe Sheryl's demeanor during those representations. Given these facts, we are not definitely and firmly convinced that the trial court made a mistake when it declined to set aside the consent judgment on the basis of duress or undue influence.

Third, Sheryl contends that the consent judgment was invalid for a lack of consideration because Jaimey agreed to give her certain personal property, but he was aware the property was missing from the marital home. We disagree.

Jaimey's attorney placed on the record the parties' agreement to waive claims regarding issues of missing personal property:

> In terms of personal property, we sat today and [Sheryl Roth] still has some . . . clothing and those kinds of shoes, personal items in the home. We will pick a date and she will be able to go in the home and remove all of those items that are personal to her, clothes, handbags, shoes, jewelry, the what not. We are—both parties have accused the other party of taking things and removing items. We are—they can make representations that they didn't do that. Certainly my client is not going to remove anything from today going forward but *we are waiving those claims*. Whatever is there is there and she's taking it. [Emphasis added.]

In her motion for a new trial, Sheryl conceded that the parties agreed to waive claims regarding the missing personal property. Therefore, we conclude that the trial court did not err when it rejected Sheryl's claim that the consent judgment lacked consideration on this ground. The parties' agreement clearly indicated that items could be missing from the home and were not part of the consent judgment.

Fourth, Sheryl contends that she was unable to make an informed decision to waive her rights because Jaimey (1) fraudulently concealed his financial records, (2) misrepresented his income, and (3) received an income tax return when he stated that he would not receive one. We decline to address these issues. Sheryl does not provide citations to the record to support these arguments, and we decline to find the necessary factual support for her. See *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2008). Further, because Sheryl did not raise these arguments until her motion for reconsideration, they are unpreserved. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

Fifth, Sheryl contends that the trial court erred by not holding an evidentiary hearing when she alleged that Jaimey perpetrated fraud. We disagree.

Sheryl alleged that the court was defrauded into believing that she agreed with the consent judgment on the basis of confusion, duress, and undue influence by her attorneys. The trial court may abuse its discretion when a party alleges fraud in a consent judgment but it fails to hold an evidentiary hearing. *Kiefer v Kiefer*, 212 Mich App 176, 183; 536 NW2d 873 (1995). However, the trial court need not hold an evidentiary hearing when it can sufficiently decide an issue on the basis of the evidence already before it. *Vittiglio*, 297 Mich App at 406. In this case,

as discussed above, the existing record clearly reflected that Sheryl agreed to the consent judgment. We conclude that the trial court's decision not to hold an evidentiary hearing did not fall outside the range of reasonable and principled outcomes.

In sum, Sheryl actively participated in the hearing and, despite her later assertions about her subjective state of mind, she clearly and unequivocally stated that she understood the settlement's terms, waived certain rights, and agreed to be bound by the consent judgment. We conclude that the trial court did not abuse its discretion by upholding the consent judgment, and we are not definitely and firmly convinced that its findings were erroneous.

## III. INTERPRETATION OF THE CONSENT JUDGMENT, DOCKET NO. 316003

### A. STANDARD OF REVIEW

As discussed above, a consent judgment is essentially a contract. *Sylvania Silica Co*, 186 Mich App at 75. This Court reviews de novo the proper interpretation of contracts and the legal effect of contractual provisions. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 379; 666 NW2d 251 (2003); *Wright v Wright*, 279 Mich App 291, 297; 761 NW2d 443 (2008).

### B. EVIDENTIARY HEARING

Sheryl contends that Judge Matthews erred by rendering a judgment before finishing the evidentiary hearing that Judge Sosnick began. We disagree.

A party waives the right to appellate review when the party's own conduct directly causes or contributes to the alleged error. *Farm Credit Servs of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 684; 591 NW2d 438 (1998). In this case, Sheryl moved in the alternative to strike the evidentiary hearing or to complete it. The trial court responded, "Okay, I haven't read any of that[.]" The trial court asked Sheryl if she was asking to strike her admission that she had used alcohol, and Sheryl's counsel responded, "I'm not." The trial court later terminated Sheryl's spousal support on the basis that Sheryl admitted that she drank wine on two or three occasions. The record indicates that the trial court granted Sheryl the relief she sought—it struck the evidentiary hearing and did not consider it when rendering its decision on the motion. Accordingly, Sheryl's assertion of error is meritless.

### C. LIQUIDATED DAMAGES

Sheryl contends that the provision of the parties' consent judgment that terminated her spousal support for consuming alcohol constituted an unenforceable liquidated damages provision. We disagree.

"A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in case of a breach." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 508; 579 NW2d 411 (1998). A liquidated damages provision is not enforceable if it is unconscionable or excessive. *St Clair Med, PC v Borgiel*, 270 Mich App 260, 270; 715 NW2d 914 (2006).

In this case, the parties' consent judgment provided that if Sheryl consumed alcohol, she would be barred from receiving spousal support:

> Defendant Wife agrees to live a chemical free lifestyle, and get a job or go to school. If during said (5) year period beginning on April 1, 2012, Defendant Wife shall gamble, consume alcohol, consume any illegal drugs, consume legal drugs for recreational purposes, fail to maintain a job or make reasonable and legitimate efforts to find employment or stay in school such spousal support payments shall immediately cease and thereafter be forever barred. . . .

This provision does not fix any amount of damages for Sheryl's breach of the parties' consent judgment. Accordingly, it does not constitute a liquidated damages provision. We reject Sheryl's argument.

## D. ALIMONY IN GROSS

Sheryl contends that the parties' spousal support agreement constituted alimony in gross rather than periodic alimony and, therefore, the trial court could not modify or discontinue it. We disagree.

Parties may structure their spousal support so that it is modifiable or not modifiable. *Staple v Staple*, 241 Mich App 562, 565; 616 NW2d 219 (2000). Alimony in gross is a "sum certain and is payable either in one lump sum or in periodic payments of a definite amount over a specific period of time." *Bonfiglio v Pring*, 202 Mich App 61, 63; 507 NW2d 759 (1993). It is not intended for the maintenance of the spouse, and is not subject to modification. *Staple*, 241 Mich App at 566. In contrast, periodic alimony "is designed to provide support and maintenance rather than to distribute property." *Friend v Friend*, 486 Mich 1035, 1035; 783 NW2d 122 (2010). Periodic alimony is modifiable and generally subject to contingencies. *Id*.

In this case, Jaimey Roth agreed to pay $2,000 a month in spousal support to provide Sheryl with "a suitable home in the children's school district" for a period of five years. At the hearing, the parties characterized this provision as "rehabilitative alimony." However, the parties' agreement provided several conditions under which his obligation would terminate, including Sheryl's death, remarriage, gambling, consumption of alcohol or illegal drugs, or failure to attempt to find and maintain employment. Because the provision was designed to provide for Sheryl's support and was subject to contingencies, we conclude that the trial court did not clearly err when it found that this provision provided for periodic, modifiable spousal support.

## E. ENFORCEABILITY OF THE PROVISION

Sheryl contends that the provision terminating her spousal support on the consumption of alcohol is unenforceable for a variety of reasons. First, Sheryl contends that she was unaware that she was entering into a settlement at the March 28, 2012 hearing. We have already rejected these assertions and we will not repeat our reasoning here.

Second, Sheryl contends that the provision terminating her spousal support if she consumes two sips of wine is unfair and violates public policy because it leaves her without a house in which to exercise custody over her children. We disagree.

Contracts that "tend to be injurious to the public or against the public good[] are illegal and void[.]" *Mahoney v Lincoln Brick Co*, 304 Mich 694, 706; 8 NW2d 883 (1943). But this Court respects the parties' freedom of contract. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 372; 817 NW2d 504 (2012). A contract does not violate public policy simply because it may be unreasonable or unfair. *Id*. The contract violates public policy only if it violates law or policy as adopted in our state and federal constitutions, statutes, or the common law. *Id*.

This Court will not invalidate portions of Sheryl's consent judgment on the basis of subjective notions of reasonableness, and Sheryl does not identify a constitution, statute, or common law that her spousal support condition violates. Sheryl agreed to the condition and, regardless of how unwise it may have been to do so or how unfair the provision may appear, these are not grounds to avoid the parties' freedom to contract.

Third, Sheryl contends that the provision was unconscionable and that she was fraudulently induced to agree to a chemical-free lifestyle. She asserts that Jaimey falsely represented that the children were to have chemical-free parents when he knew that the consent judgment did not prohibit Winkler from engaging in similar behaviors.

We decline to review these claims for two reasons. First, "we need not address issues first raised on appeal." *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Sheryl did not raise either claim before the trial court, and they are unpreserved. Second, Sheryl's assertions lack factual support in the record. The appellant has the burden to create a factual record to support his or her argument and to provide that record to this Court. *Reed v Reed*, 265 Mich App 131, 160; 693 NW2d 825 (2005). Sheryl claims that she would be able to prove her allegations "if given a chance," but it is not sufficient for the appellant to simply claim that he or she could provide support for allegations if this Court remanded. We decline to address these issues.

## IV. THE CHILDREN'S CUSTODY

### A. STANDARDS OF REVIEW

This Court must affirm the trial court's findings of fact related to matters of child custody unless they are against the great weight of the evidence. MCL 722.28; *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). The trial court's factual findings are against the great weight of the evidence only if the evidence "clearly preponderate[s] in the opposite direction." *Id*. (alteration in original, quotation marks and citation omitted).

This Court reviews for a "palpable abuse of discretion" the trial court's discretionary decisions, including its ultimate custody award. *Fletcher v Fletcher*, 447 Mich 871, 879, 881; 526 NW2d 889 (1994); *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). A palpable abuse of discretion occurs when the trial court's decision is "grossly violative of fact and logic" and "evidences not the exercise of will but the perversity of will, not the exercise of

judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Fletcher*, 447 Mich at 879-880 (quotation marks and citation omitted).

This Court reviews for an abuse of discretion the trial court's evidentiary rulings. *Reed*, 265 Mich App at 160. However, this Court reviews de novo preliminary questions of law surrounding the admissibility of evidence. *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 224; 663 NW2d 481 (2003).

## B. EVIDENTIARY ISSUES

First, Sheryl Roth contends that the trial court abused its discretion by excluding testimony from Linda Ross, a neighbor, when the testimony was not hearsay. In an offer of proof, Ross indicated that she would have testified that the children have told her that "my daddy says you're a witch and a b***." We disagree.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). If multiple levels of hearsay are involved, each of the declarations must be admissible. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 538; 775 NW2d 857 (2009).

In this case, Sheryl contended that she was offering Linda Ross's statement about what the children said Jaimey said in order to show that Jaimey was making negative statements to the children. Thus, the matter asserted was that Jaimey was making negative statements to the children. Sheryl offered evidence of a statement by Jaimey (the declarant) through Linda Ross (a person other than the declarant) to prove that Jaimey was, in fact, making negative statements. We conclude that the trial court correctly determined that the statement fit the definition of hearsay because Sheryl offered the statement to prove the truth of the matter asserted.

Second, Sheryl contends that the trial court improperly excluded Friedman's deposition testimony when Friedman was unavailable to testify at trial. A party abandons an issue when he or she fails to provide authority to support his or her assertions, MCR 7.212(C)(5); *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000), or fails to address the basis of the trial court's decision, *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Sheryl's argument is entirely devoid of legal support and does not address the basis of the trial court's decision. The trial court decided that Sheryl did not establish that Friedman's testimony would be helpful to its decision because Friedman had never met the children. We conclude that Sheryl has abandoned this issue.

Third, Sheryl contends that the trial court abused its discretion by denying her request to depose Winkler before trial. While Sheryl raises this issue in her statement of questions presented, she does not argue it in the body of her brief or provide any support for this argument. Parties abandon issues on appeal if they "merely announce their position and leave it to this Court to discover and rationalize a basis for their claims." *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008). We conclude that Sheryl has abandoned this issue as well.

## C. ESTABLISHED CUSTODIAL ENVIRONMENT

Sheryl Roth contends that the trial court erred by finding that the children had an established custodial environment with Jaimey Roth because he failed to call Winkler as a witness in order to establish that his custodial environment was satisfactory. We conclude that Sheryl's arguments lack merit.

Sheryl misapprehends the role of the children's custodial environment in child custody proceedings. "An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child." *Berger*, 277 Mich App at 706. If an established custodial environment exists, the party seeking to change the child's custody to a different environment must establish by clear and convincing evidence that modifying the child's environment is in the child's best interest. *Mitchell v Mitchell*, 296 Mich App 513, 520; 823 NW2d 153 (2012); MCL 722.27a(1)(c).

In this case, both Dr. Shiener and Elliott testified that the children were in a stable environment with Jaimey Roth. Elliott testified that the children discussed their feelings with Jaimey and he provided them with guidance. Evidence supported the trial court's finding that the children had an established custodial environment with Jaimey. And even were we to conclude otherwise, reversal would not be warranted. The trial court applied the more stringent clear and convincing evidence standard to its decision to modify the children's custody.

Further, whether Jaimey established the environment through underhanded means is not pertinent to this issue. The manner in which the children's custodial environment was established is not relevant. *Berger*, 277 Mich App at 707. Whether the children's existing and proposed environments were "satisfactory" was a question of the children's best interests, see MCL 722.23(d), which is a separate inquiry.

## D. SUFFICIENCY OF THE TRIAL COURT'S FINDINGS

Sheryl Roth contends that the trial court erred by summarizing the testimony presented at the evidentiary hearings and by failing to mention certain facts. We disagree.

In this case, the trial court summarized the facts presented at the extensive evidentiary hearings before it made its findings and conclusions. Sheryl Roth provides authority to support her argument that it is somehow inappropriate for the trial court to summarize the proceedings. Nonetheless, we have reviewed the trial court's summary and conclude that it fairly reflects the evidence that the parties presented at trial. To the extent that the trial court did not mention evidence Sheryl Roth found pertinent, it is not required to comment on each piece of evidence. See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). We conclude that the trial court did not reversibly err.

## E. THE CHILDREN'S BEST INTERESTS

The trial court must make its determination about a child's custody on the basis of the child's best interests. MCL 722.25(1); *Berger*, 277 Mich App at 705. To determine what is in the child's best interests, the trial court must consider the following factors:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.  [MCL 722.23.]

This Court will not disturb the trial court's factual findings regarding the children's best interests unless the evidence clearly preponderates in the opposite direction. *Fletcher*, 447 Mich at 879.

First, Sheryl Roth contends that the trial court erred when it found that factor (a), the love, affection, and emotional ties of the children, favored Jaimey Roth.  It found that both parties loved the children, but the children had a stronger emotional bond with Jaimey Roth.

Ross testified that Jaimey Roth emotionally manipulated the children.  And Jaimey Roth testified that he had previously engaged in negative behaviors, but claimed that he had stopped doing so.  However, Sheryl Roth admitted that the children were angry with her.  Elliott, the children's counselor, testified that one of the children told her about anger and resentment

stemming from a time that the child caught Sheryl Roth engaged in sexual activity with a man other than Jaimey. Further, Platt testified that the children were proud, happy, and well-behaved in Jaimey's home, but the children were unhappy in Sheryl's care. According to Platt, the children had volatile parenting sessions with Sheryl that included acts of physical aggression. Given the extensive conflicting evidence, we conclude that the evidence did not clearly preponderate against the trial court's finding.

Second, Sheryl Roth contends that the trial court erred when it found that factor (b), the parties' capacity to give the children love, education, and guidance, favored Jaimey Roth. The trial court found that Jaimey was more inclined to continue the children's religious education and provide them with parental discipline and that Sheryl engaged in inappropriate behavior in front of the children and placed her personal needs over those of the children.

Jaimey Roth testified extensively about his involvement in the children's religious education, including overseeing their Shabbat dinners, prayers, mitzvahs, Hebrew and Sunday schools, and participation in Temple. Conversely, Sheryl Roth testified that she was not involved in the children's religious education, did not have prayer books, and did not attend Jewish services. Platt testified that Sheryl did not provide appropriate discipline to the children during parenting time. Elliott testified that Jaimey provided the children with appropriate discipline. We conclude that the evidence did not clearly preponderate against the trial court's finding.

Third, Sheryl Roth contends that the trial court erred when it found that factor (d), the length of time the children had lived in a stable and satisfactory environment, and factor (e), the permanence of a family unit in the existing or proposed homes, favored Jaimey Roth. The trial court found that these factors favored Jaimey because he had provided stability by keeping the children in a single permanent home, but Sheryl did not maintain adequate housing and had not found permanence.

Jaimey Roth testified that he had been living and intended to continue to live in the marital home with the children. Even Sheryl testified that she believed that Jaimey could provide the children with a stable and satisfactory home. In contrast, Sheryl had difficulty maintaining housing. We conclude that the evidence did not clearly preponderate against the trial court's findings.

Fourth, Sheryl Roth contends that the trial court erred when it found that factor (f), the parties' moral fitness, favored Jaimey Roth. The trial court found that Sheryl's poor moral decisions adversely affected her relationship with the children.

As previously discussed, the record reflects that the children witnessed Sheryl Roth engaged in behavior that adversely affected their relationship with her. We are not convinced that the evidence clearly preponderated against the trial court's finding.

Fifth, Sheryl Roth contends that the trial court erred when it found that factor (g), the parties' mental and physical health, favored Jaimey Roth. The trial court found that Sheryl's mental health problems were more serious.

Dr. Shiener testified that Jaimey Roth has a propensity to engage in relationships with needy individuals. However, Dr. Shiener also testified that Sheryl Roth has addiction issues involving gambling and alcohol and a failure to acknowledge and deal with those issues. Accordingly, Dr. Shiener opined that Sheryl had a guarded prognosis. Given Dr. Shiener's testimony, we conclude that the evidence did not clearly preponderate against the trial court's finding.

Sixth, Sheryl Roth challenges the trial court's findings under factor (j), the willingness of a party to facilitate the relationships between the children and the other party. The trial court found that factor (j) favored neither party because both each party had disparaged the other in front of the children.

Elliott, the children's counselor, testified that the children told her that Sheryl Roth said negative things about Jaimey Roth. Elliott also testified that she saw Jaimey improve in his ability to correct the children when they speak negatively about Sheryl and that Jaimey encouraged the children to behave better when with Sheryl. Platt testified that she did not observe either party engage in negative behavior when exchanging the children for parenting time. Regarding Sheryl's allegations that Jaimey manipulated the children and turned them against her, to the extent that the trial court chose not to credit her allegations, we will not overturn the trial court's credibility determination. See MCR 2.613(C); *Berger*, 277 Mich App at 707. The evidence does not clearly preponderate against the trial court's finding that this factor favored neither party.

Seventh, regarding the overall weight of the best interest factors, Sheryl Roth contends that the trial court should have weighed factor (k), domestic violence, more strongly in her favor. The trial court found that factor (k) favored Sheryl because Jaimey engaged in bullying behavior and fueled the children's outbursts and anger toward Sheryl. Sheryl also contends that factor (h), the children's home, school, and community records, only mildly favored Jaimey.

The trial court need not mathematically calculate its custody determination, or give equal weight to best interest factors when making its custody decision. *Berger*, 277 Mich App at 712; *McCain v McCain*, 229 Mich App 123, 131; 580 NW2d 485 (1998). In this case, the trial court extensively considered the best interest factors and determined that the overall weight of those factors favored Jaimey Roth. It did not assign any particular weight to any factor, but it was not required to. It is clear from the trial court's detailed analysis that it exercised judgment and reason when determining the children's custody. We conclude that the trial court did not palpably abuse its discretion by awarding Jaimey Roth sole custody of the children.

## V. CONCLUSION

We affirm in Docket No. 312008 because we conclude that Sheryl Roth has failed to establish grounds to set aside her consent judgment of divorce. We affirm in Docket No. 316008 because we conclude that Sheryl Roth has failed to establish that the condition of the parties' consent judgment prohibiting her from consuming alcohol was invalid. And we affirm in Docket No. 321564 because we conclude that the trial court did not err in its decisions regarding the evidence, established custodial environment, the best interests of the children, or its ultimate custody decision.

-14-

Affirmed. As the prevailing party, Jaimey Roth may tax costs. MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell